Jimmy Lee JARRETT *v.* STATE of Arkansas

CR 92-171                                          833 S.W.2d 779

Supreme Court of Arkansas
Opinion delivered July 20, 1992

C.D. *Mitchell*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Didi Sallings*, Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. The appellant, Jimmy Lee Jarrett, was convicted of first degree battery and rape of Earl Easom. The jury imposed consecutive sentences of twenty years and life imprisonment, respectively. Jarretts' sole point of error on appeal is that the trial court erred in admitting evidence of prior bad acts. Finding no abuse of discretion by the trial court, we affirm the judgment.

Jarrett lived in Lawrence County with his wife, Mary Jarrett, and their two children, Joanna and Jimmy Joe. Also living in the home were Barbara Easom and her children, Earl and Lisa. The Easoms had begun living with the Jarretts thirteen years ago when Lisa was about seven and Earl about five. The charges in this case, and Jarrett's subsequent conviction, arose from Earl Easom's allegations that Jarrett forced him to engage in anal and oral intercourse and committed batteries by striking his testicles with a wooden board.

In addition to Earl Easom, Lisa Easom, Barbara Easom, and Mary Jarrett, two disinterested witnesses testified for the state. Robert Mankey said he had known Jimmy Lee Jarrett for thirty

years, since they were schoolmates. He said that last April or May he had three conversations with Jarrett relative to Earl Easom and Jarrett said "I'm going to bust his nuts again." In a later conversation he said Jarrett laughed about it, and said, "I made him cup them and busted them with the board. He hit the ground. He just rolled. Then I told him, 'Spit them up.' He just laughed about it." Mankey described a third conversation in which Jarrett confirmed that he had been striking Earl's testicles.

Mrs. Diana Neldon, a neighbor, testified to a conversation which occurred in her front yard. She said Robert Mankey, Jimmy Lee Jarrett, Mary Jarrett and Lisa Easom were present. Asked what Jarrett said about Earl's testicles, she responded.

> He said he made Earl drop his pants. He said, "I busted him so hard that you could hear him for a mile and brought him to his knees." And then he said, he said, "His balls were swollen this big (indicating)."

During an investigation of allegations against Jarrett, various members of the household gave statements to the police describing other incidents of sexual and physical abuse inflicted by Jarrett. Jarrett filed a pretrial motion in limine to exclude testimony of these allegations. Following a hearing the trial court announced that it would reserve a ruling on the admissibility of each prior act until offered at trial, at which time the court would determine its admissibility under A.R.E. Rule 403, which requires a weighing of probative value against the danger of unfair prejudice, and Rule 404(b), containing exceptions to the admissibility of bad character evidence. Testimony admitted at trial, over Jarrett's objection, included evidence that Jarrett had had ongoing sexual intercourse with Lisa Easom, Earl's sister, and that Jarrett had shot both Earl and Mary Jarrett, his wife.

Lisa, who was nineteen at the time of trial, testified Jarrett began forcing her to have sexual intercourse when she was about ten years old and this continued until three to four months before trial. Barbara Easom confirmed Lisa's testimony and stated she became aware of this fact only in the last couple of years.

Earl testified at trial that Jarrett raped him by by forcing him to have anal and oral intercourse. He stated this happened numerous times over the past ten years. As to the battery charge,

Earl testified as follows:

> Q: Okay. Just tell the jury what he did, how, how would he go about this?
>
> A: Okay. The first time he did it, he made me pull my pants down and I had to bend over and he grabbed them and he got ahold of them and he squeezed them where they'd be, they'd be tight? Then he took a board and took it and just swing and hit me.
>
> Q: Okay, and what was the effect on you?
>
> A: I had to, I couldn't hardly walk. I, I got real bad stomach pains. I, I couldn't hardly use the bathroom. And then after he done it a couple more times, I had to be put in the hospital for about a week and a half to get them drained.
>
> Q: What'd you mean drained?
>
> A: They had to put a nee— had to put, lance them, had to stick a needle in them to, to drain all that pus and stuff out of them; and they had to, when they lanced, they had to squeeze it to try to get all that stuff out of it, they were swelled up so bad. I was busted open.

Asked if Jarrett had "done anything else" to him, Earl testified that Jarrett had shot him in the foot and had shot Mary Jarrett in the arm. Over Jarrett's objection, the trial court ruled the evidence was admissible.

Mary Jarrett testified regarding her fear of her husband and of his threats to her and her children if she told the police the truth about Jarrett's abuse. Mrs. Jarrett admitted she initially lied to authorities, explaining that she believed Jarrett's threats since he had shot her as well as Earl. Mrs. Jarrett stated the shooting incident occurred when Jarrett pointed the gun at her four-year-old son, threatening to kill him. She testified "I pushed the gun down, Earl got it in the feet and I laid in traction for forty-five days with my arm up in the air. . . ." She testified:

> Q: Now when Mr. Jarrett said he would kill you if you if you told the sheriff the truth, did you believe him?
>
> A: Yes, sir, I did.

Q: Why did you believe him?

A: He'd already shot me once and shot the boy.

The trial court admitted the testimony to explain her prior inconsistent statements to the sheriff. On appeal, Jarrett maintains the testimony as to prior bad acts was highly prejudicial and of little probative value. The state, on the other hand, argues that this testimony was admissible on either of two grounds: One, to show a plan or scheme pursuant to A.R.E. 404(b), and, two, refute Jarrett's contention that the charges against him were fabrications.

As to the testimony of Lisa Easom, it is well established that evidence of similar sexual acts with other children is admissible when it tends to show a proclivity toward a specific act with a person or class of persons with whom the accused has had an intimate relationship. *Marcum* v. *State*, 299 Ark. 30, 771 S.W.2d 250 (1989); *Free* v. *State*, 293 Ark. 65, 732 S.W.2d 452 (1987). The testimony of Lisa Easom was relevant to prove the charge of rape, and its probative value far outweighed any prejudice it may have had.

As to the testimony concerning the shooting, on cross examination the family members admitted that when the sheriff first investigated the reported abuse by Jarrett they denied any wrongdoing. Thus, the state contends the testimony concerning the shootings was relevant to whether the witnesses had reason to fear Jarrett and whether those fears affected their earlier statements.

It was proper for the state to refute the inference that the initial denials to the sheriff by the state's witnesses were the result of fear and intimidation rather than a lack of veracity. *Gustafson* v. *State*, 267 Ark. 830, 593 S.W.2d 187 (C.A. 1980). Where the testimony of a witness is weakened, discredited or obscured by cross examination, it is permissible to rebut the discrediting effect of damaging admissions so elicited. *Allen* v. *State*, 260 Ark. 466, 541 S.W.2d 675 (1976).

As to the balancing process contemplated by A.R.E. Rule 403 and 404(b), the trial court weighed the evidence, specifically found the probative effect was not outweighed by substantial prejudice, and chose to admit the proof. We have said

repeatedly that the admission or rejection of evidence under Rule 404(b) is left to the sound discretion fo the trial court and will not be disturbed on appeal absent a manifest abuse of discretion. *Bennett* v. *State*, 297 Ark. 115, 759 S.W.2d 799 (1988); *Harris* v. *State*, 295 Ark. 456, 748 S.W.2d 666 (1988).

■ The testimony by the state's witnesses was wholly unchallenged. The appellant has not demonstrated a manifest abuse of discretion and, accordingly, the judgment is affirmed.

BROWN, J., concurs.

HOLT, C.J., and DUDLEY and NEWBERN, JJ., dissent.

ROBERT L. BROWN, Justice, concurring. I join in the opinion of Justice Hays but write to emphasize an additional point. The two families in this case lived together and were clearly terrorized by Jarrett's actions. In a real sense, it was an abused household. The appellant assaulted the family members sexually and physically and shot Earl Easom in the foot and Mary Jarrett in the arm. The facts are murky as to when this happened (it may have been eight years previously) or whether it occurred in one incident or two. With each day we are confronted with new cases of battered children, battered spouses, and battered families. In cases where the battered child syndrome is at issue, the courts have typically allowed a full recapitulation of the parent-child relationship. *See United States* v. *Harris*, 661 F.2d 138 (10th Cir. 1981) (evidence of repeated incident relevant to prove child abuse); *State* v. *Tanner*, 675 P.2d 539 (Utah 1983) (complete story required to show defendant's pattern of behavior toward a child). The Utah Supreme Court was correct in *Tanner* when it said:

> Where the presence of the battered child syndrome is shown in the child and the defendant is the child's caretaker, logic and the interest of justice demand as complete a story as possible concerning the crime and the surrounding circumstances.

675 P.2d at 548. This also holds true with respect to the criminal defense of battered woman syndrome where, typically, a history of the battery is presented to the jury followed by an expert's evaluation. *See generally* "Assisting the Jury in Understanding Victimization: Expert Psychological Testimony on Battered Woman Syndrome and Rape Trauma Syndrome," 25 Colum.

J.L. & Soc. Probs. 277 (1992). In *Thompson* v. *State*, 306 Ark. 193, 813 S.W.2d 249 (1991), we referred to the necessity of foundation testimony of historic battering as essential to a battered-woman-syndrome defense.

Moreover, this court has accepted evidence of violent behavior towards persons other than the victim in assessing whether to transfer the case of a juvenile charged with rape to juvenile court. *Slay* v. *State*, 309 Ark. 507, 832 S.W.2d 217 (1992). And we have held a number of times that we will allow testimony of similar sexual acts with children if it tends to show a proclivity to the same behavior. *See, e.g., Fry* v. *State*, 309 Ark. 316, 829 S.W.2d 415 (1992); *George* v. *State*, 306 Ark. 360, 813 S.W.2d 792 (1991).

The same rationale applies to the battered family. Evidence of violent behavior toward the family members, whether sexual or physical, is distinctly relevant. Ark. R. Evid. 404(b) permits evidence of past wrongs for purposes "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." (Emphasis added.) At the very least, the evidence of the shootings is admissible under Rule 404(b) as a pattern of violent behavior toward Earl Easom and Mary Jarrett.

But, in truth, the correct analysis should be under Rule 403 because the prior shootings are so clearly relevant. The issue then becomes whether the relevancy is outweighed by the danger of *unfair* prejudice. Admissibility of this evidence was not unfair to this appellant but, rather, it established why and how he controlled the household.

For these reasons and for the reasons expressed in the majority opinion, I concur.

JACK HOLT, JR., Chief Justice, dissenting. The evidence of prior shootings should not have been admitted and, for this reason, I respectfully dissent.

The majority premises its holding as to the admissibility of the shooting incidents on the fact that it was properly admissible to rebut damaging inferences on cross-examination. First of all, this ignores the fact that the evidence of Jarrett's shooting of Earl and Mary was first brought out, not in rebuttal, but in the State's

case-in-chief. Second, although we have held the list of exceptions in this rule is not exhaustive, *see White* v. *State*, 290 Ark. 130, 717 S.W.2d 784 (1986), and although the testimony regarding the previous shootings may have been relevant to various collateral issues in the case, I do not find it was relevant, either in time or in nature, to the crimes with which Jarrett was charged.

In *White*, we reasoned that prior acts of violence, like prior acts of child abuse and incest, are admissible to show a propensity to commit the particular sort of crime in question with the same person or class of persons with whom the accused shares an intimate relationship. There, however, the admitted evidence consisted of testimony that the defendant severely beat his wife just two weeks prior to his murdering her in the same manner. Similarly, in *Sterling* v. *State*, 301 Ark. 603, 786 S.W.2d 114 (1990), we upheld the admissibility of evidence that, as recently as three days before shooting his wife, the defendant threatened to kill her with a gun and beat her. The evidence was necessary to prove premeditation and deliberation for first degree murder. *See also Limber* v. *State*, 264 Ark. 479, 572 S.W.2d 402 (1978)(evidence of physical abuse of one child in the home admitted to prove intent and lack of mistake or accident in the beating death of that child's sibling); *Rudd* v. *State*, 308 Ark. 401, 825 S.W.2d 565 (1992)(prior theft and burglary convictions admitted to show defendant's intent to commit burglary and to counter defense of mistake in entering home).

Evidence that Jarrett once shot the victim and Mary Jarrett, some eight or nine years ago, was, in no way, related to the incidents of rape and the specified battery charge nor was it necessary to show Jarrett's intent. The intent was obvious in the nature of the crimes committed. Furthermore, the State failed to elicit clear testimony as to when the shootings occurred and even whether they were part of one or separate incidents. The only connection in time was a single statement by Earl that the rapes began occurring ten years ago, two years prior to when he claimed to have been shot in the foot. (We note the information confined the charges to a date three months prior to trial for battery and to "within the past three years" for rape.)

The testimony was simply irrelevant to the crimes at issue and could only have served to show Jarrett "acted in conformity

therewith." Rule 404(b). It follows that the prejudice to Jarrett outweighed the probative value of the evidence, and, for these reasons, I would grant Jarrett a new trial.

I also take issue with the concurring opinion filed by Justice Brown. Evidence of the shootings is not admissible under Rule 403. Rule 403 pertains to the exclusion of *relevant* evidence by weighing its probative value against the charge of unfair prejudice. Here, again, I say the evidence of the shootings, some eight years prior to the charges in question, is not relevant in time, nor in nature.

For these reasons, I would reverse and remand for retrial.

DUDLEY and NEWBERN, JJ., join in this dissent.