Richard CLARK *v.* STATE of Arkansas

CR 95-408                                             913 S.W.2d 297

Supreme Court of Arkansas
Opinion delivered January 29, 1996

*Charles E. Halbert, Jr.*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Brad Newman*, Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant, Richard Clark, appeals the order of judgment and commitment, entered October 7, 1994, in the Phillips County Circuit Court convicting him, by jury trial, of one count of rape and sentencing him to imprisonment for forty years. Jurisdiction is properly in this court pursuant to Ark. Sup. Ct. R. 1-2(a)(2). Appellant asserts five points for reversal. We affirm the trial court's order.

Appellant does not challenge the sufficiency of the evidence, so there is no need to recite it in detail. The charge against appellant was the result of a single incident occurring on the evening of April 8, 1993, when appellant picked up his daughter, the victim, then aged ten years, to drive her to his house. The victim testified that on their way to appellant's house, appellant stopped the car, told her to get in the back seat, put her "short pants" on the floor, put his own clothes on the front seat, got in the back seat with her, lay on top of her while she lay on her back, and stuck "his private" in "her private." The victim testified that it felt like a bottle, that she told appellant to stop, that appellant did this for about an hour, and that she had to go to the hospital later because appellant had hurt her and she was bleeding. On April 9, 1993, the victim was treated for a bleeding vaginal laceration at the emergency room of Arkansas Children's Hospital in Little Rock and was admitted to its medical surgical unit. The hospital recommended that the victim receive mental health counseling, and, subsequently, she did.

### Evidence of prior bad acts

Appellant's first assignment of error is the admission of certain portions of the testimonies of the victim and Donna McKuen, an Arkansas Department of Human Services family service worker, as follows. The victim testified that appellant had never "done this" to her before. When asked whether appellant had "done it" to any of the other children who lived in his house, the victim replied affirmatively, and testified that she had seen appellant do the same thing he had done to her to eight-year-old Kenisha Harris in his house. Ms. McKuen testified that she had interviewed the victim on May 3, 1993, and had asked the victim if anyone had done anything bad to her, and that the

victim had answered "yes, my daddy" and described the circumstances of the April 8, 1993 rape. Ms. McKuen also testified that, during the same interview, the victim told her that appellant had "done this to her" four times before.

Appellant contends these testimonies should have been excluded pursuant to Ark. R. Evid. 404(b) and 403, respectively, as character evidence that had no relevance except to show appellant's propensity to commit the crime charged, and that was unfairly prejudicial. This argument is meritless.

■ In *Greenlee v. State*, 318 Ark. 191, 197, 884 S.W.2d 947, 950 (1994), we reversed Greenlee's conviction for the rape of a five-year-old girl on other grounds, but stated that the trial court did not err by admitting evidence of Greenlee's four prior convictions for sex-related offenses against other minor victims, as follows:

> If this case did not pertain to child abuse or incest, the evidence of other crimes would be inadmissible character evidence under Rule 404(b) of the Arkansas Rules of Evidence. However, we allow such evidence under a pedophile exception to show "similar acts with the same child or other children in the same household when it is helpful in showing a 'proclivity toward a specific act with a person or class of persons with whom the accused has an intimate relationship.' " *Free v. State*, 293 Ark. 65, 71, 732 S.W.2d 452, 455 (1987) (quoting *White v. State*, 290 Ark. 130, 717 S.W.2d 784 (1986)). Appellant committed the prior offenses against young children, just as he was accused of doing in this case . . . . We have long held that such evidence helps to prove the depraved sexual instinct of the accused. *Williams v. State*, 103 Ark. 70, 146 S.W. 471 (1912).

This rationale is equally applicable to evidence of other sexual acts by the accused with the victim or another child in the same household. *See Thompson v. State*, 322 Ark. 586, 910 S.W.2d 694 (1995); *Jarrett v. State*, 310 Ark. 358, 833 S.W.2d 779 (1992); *Free v. State*, 293 Ark. 65, 732 S.W.2d 452 (1987). Appellant cites no authority contradicting this rule of law in the context of a sex-related offense involving a minor victim. Thus,

appellant fails to demonstrate that the trial court's ruling violated Rule 404(b).

■ Further, the challenged testimony was relevant to prove the charge of rape, and its probative value substantially outweighed its prejudicial effect. *Jarrett*, 310 Ark. 358, 833 S.W.2d 779; *Free*, 293 Ark. 65, 732 S.W.2d 452. Thus, appellant fails to demonstrate that the trial court's ruling violated Rule 403.

### *Ark. R. Evid. 615*

The victim was permitted, without objection, to testify while seated at a table placed before the witness stand so that she faced the jury. As the examining attorney asked the victim each question, she wrote her response on a piece of paper and the attorney read the response aloud before proceeding to the next question. Appellant's second assignment of error is the trial court's ruling, over appellant's objection pursuant to Ark. R. Evid. 615, that Ms. McKuen would be permitted to sit with the victim while the victim testified. The state requested this seating arrangement to "enable [the victim] to testify better[.]" The trial court granted the state's request on the conditions that: (1) if Ms. McKuen was called as a witness by the state, she would testify prior to the victim, (2) Ms. McKuen would not make suggestions to the victim during the victim's testimony, and (3) Ms. McKuen would not be subject to recall by the state.

■ Rule 615 governs the exclusion of witnesses from the courtroom so that they may not hear the testimony of other witnesses. The provisions of Rule 615 are mandatory. *King* v. *State*, 322 Ark. 51, 907 S.W.2d 127 (1995). Nonetheless, pursuant to exceptions set forth in Rule 615 and in Ark. R. Evid. 616, certain persons, including the victim of the crime, have the right to remain in the courtroom. Appellant does not argue and the record does not reflect that Ms. McKuen was qualified to remain in the courtroom under any exception. Therefore, Ms. McKuen should have been excluded from the courtroom, *id.*, and the trial court erred in ruling otherwise.

■ We do not find, however, that the trial court's error requires us to reverse its judgment because appellant fails to show that any prejudice resulted. Prejudice is not presumed and

we do not reverse absent a showing of prejudice. *Id.; Wallace* v. *State*, 314 Ark. 247, 862 S.W.2d 235 (1993). Appellant argues, without authority, that he was prejudiced because Ms. McKuen's presence made it appear he was trying to intimidate the victim and that the victim had to have someone with her. The abstract does not support appellant's assertion, and, in fact, even fails to reflect whether Ms. McKuen was present in the courtroom during the victim's testimony. The abstract does show that Ms. McKuen testified prior to the victim and was not recalled to the stand.

■ The purpose of Rule 615 is to expose inconsistencies in the testimonies of different witnesses and " 'to prevent the possibility of one witness's shaping his or her testimony to match that given by other witnesses at trial.' " *King*, 322 Ark. 51, 55, 907 S.W.2d 127, 129 (quoting *Fite* v. *Friends of Mayflower, Inc.*, 13 Ark. App. 213, 682 S.W.2d 457 (1985)). There is no abstracted evidence of such conduct as a result of the trial court's erroneous ruling. On this record, we cannot say that appellant has demonstrated reversible error.

*Failure to include Ms. McKuen on witness list*

Appellant's third assignment of error is that Ms. McKuen should not have been permitted to testify because the state failed to include her name on its witness list, in violation of its discovery obligation under Ark. R. Crim. P. 17.1 and 19.2. This argument is meritless.

■ First, an appellant is required to make an objection at the first opportunity in order to preserve the argument for appeal. *Edwards* v. *State*, 321 Ark. 610, 906 S.W.2d 310 (1995). Appellant did not object to Ms. McKuen's testimony until she had taken the stand and answered twenty-four questions. At that point, Ms. McKuen was testifying as to her May 3, 1993 interview with the victim. Appellant objected that he had no statements taken by Ms. McKuen, and, after a brief exchange between the trial court and the parties' trial counsel regarding this objection, a bench conference ensued wherein appellant's counsel stated that the state "has got to let me know [Ms. McKuen] is going to testify." On this record, we do not find that appellant objected at the earliest opportunity. *Id.*

■ Second, Rule 17.1 provides that, upon timely request, the state shall disclose to defense counsel the names and addresses of persons whom the state intends to call as witnesses; Rule 19.2 provides that the state's obligation is a continuing one. The abstract, however, does not show appellant's discovery request to the state, as required by Rule 17.1, or any witness list appellant received from the state. It is the duty of the appellant in a criminal case to abstract such parts of the record that are material to the point he argues, and his failure to do so precludes the appellate court from considering issues concerning it. *Manning* v. *State*, 318 Ark. 1, 883 S.W.2d 455 (1994).

Third, the record demonstrates that appellant was aware that Ms. McKuen was a prospective state's witness, as follows. An in-camera conference was conducted immediately prior to Ms. McKuen's testimony, wherein the trial court considered appellant's Rule 615 objection that we discussed above. During that conference, appellant's counsel argued that he anticipated Ms. McKuen was going to be a witness, and, therefore, she could not stay in the courtroom during the victim's testimony.

■ Fourth, even assuming the state violated its discovery obligation by failing to disclose Ms. McKuen as a prospective witness prior to trial, appellant could have requested time to interview Ms. McKuen before she was called to testify. *Mills* v. *State*, 322 Ark. 647, 910 S.W.2d 682 (1995). We have held that such a course of action by the trial court so ameliorated the state's failure to comply with Rule 17.1 that the accused was not prejudiced. *Id.* Alternatively, appellant could have requested a continuance. Ark. R. Crim. P. 19.7. Appellant, however, failed to request either of these remedies.

### Hearsay

Appellant's fourth assignment of error is the admission of those portions of the testimonies of Ms. McKuen and Ms. Carol Crider reporting the victim's out-of-court statements to them describing her rape. Ms. Crider was a social worker with the Arkansas Children's Hospital who interviewed the victim at the hospital on April 9, 1993.

The trial court ruled these testimonies were admissible after the state characterized them as medical history, an apparent

allusion to the hearsay exception for statements made for purposes of medical diagnosis or treatment under Ark. R. Evid. 803(4). Appellant argues that these testimonies regarding the victim's out-of-court statements were inadmissible hearsay offered to bolster the victim's testimony as prior consistent statements.

Citing *Gatlin v. State*, 320 Ark. 120, 895 S.W.2d 526 (1995), the state correctly points out that, on the facts of this case, it is unnecessary to consider whether the trial court's ruling was erroneous. In *Gatlin*, we held that the trial court's erroneous admission of the hearsay testimonies of two family members, which reported an out-of-court statement of the rape victim, a minor, was rendered harmless where the rape victim's own trial testimony independently evidenced her rape and the rape victim was available at trial for cross-examination by the appellant. In light of the victim's trial testimony and availability for cross-examination by appellant, this point of the appeal is governed by *Gatlin*.

### *Jury instruction*

The trial court instructed the jury that in order to convict appellant, the state must prove that he engaged in sexual intercourse or deviate sexual activity with the victim. Appellant's fifth assignment of error is the inclusion of the language "or deviate sexual activity" in the instruction because, he argues, there was no evidence to support that part of the instruction. This argument is meritless.

"Sexual intercourse" is defined as "penetration, however, slight, of a vagina by a penis." Ark. Code Ann. § 5-14-101(9) (Repl. 1993). "Deviate sexual activity" is defined as:

[A]ny act of sexual gratification involving:

(A) The penetration, however slight, of the anus or mouth of one person by the penis of another person; or

(B) The penetration, however slight, of the vagina or anus of one person by any body member or foreign instrument manipulated by another person[.]

Ark. Code Ann. § 5-14-101(1) (Repl. 1993). State's witness, Dr. Ava Komoroski, a physician in the emergency department

of Arkansas Children's Hospital who examined the victim on April 9, 1993, testified that, in her opinion, a "a large object" penetrated and entered the victim's vagina. Dr. Komoroski testified that nothing in her examination could tell the court what it was that actually caused the victim's injury. The victim testified that, when appellant raped her, it felt like a bottle. On this record, we cannot find that the abstract supports the premise for appellant's argument, that is, that no evidence was introduced to support the "deviate sexual activity" portion of the instruction.

Affirmed.

DUDLEY and BROWN, JJ., dissent.

ROBERT H. DUDLEY, Justice, dissenting. The majority opinion holds that the trial court erred in admitting the hearsay testimony of Donna McKuen and Carol Crider and in refusing to exclude Ms. McKuen from the courtroom after defendant requested the exclusion of all witnesses under Ark. R. Evid. 615. However, the majority opinion then holds the errors were harmless. I agree that the trial court erred in both rulings, but I cannot agree that the errors were harmless. Accordingly, I dissent.

The victim, a ten-year-old girl, was understandably affected by the surroundings in the courtroom, the people confronting her, and the unpleasant responsibility of testifying that her father had committed the crime of rape against her. Even so, the record does not disclose that the State made any attempt to videotape the young victim's testimony, see Ark. Code Ann. § 16-44-203 (Repl. 1994), or that the State attempted to introduce the hearsay testimony through Ark. R. Evid. 803(25). The young victim was so recalcitrant that she would not answer questions aloud. Instead, she could only write her responses to questions, and the examining attorney then read the answers to the jury. Under the circumstances, her direct testimony in the State's case-in-chief was very limited. It is, in material part, abstracted as follows:

> He picked me up to go to his house on April 8. Nobody else was with us. We went in his car. When he stopped the car he told me to get in the backseat. He put my short pants on the floor. He put his clothes in the front seat. After I got in the backseat my father got in the backseat

with me. He was on top of me. It was dark outside. I was laying in the backseat on my back. My dad stuck his private in my private. It felt like a bottle. I told him to stop. My father did this to me about an hour. I had to go to the hospital later because my dad hurt me. I was bleeding. My dad has never done this to me before.

Ms. McKuen gave hearsay testimony to many more details. Her direct testimony in the State's case, in material part, was as follows:

I asked her if something bad had happened to her and she said yes ma'am. I asked her if anyone had done anything bad to her and she said "Yes, my daddy." I asked her if she ever wanted to see him again and she said "No." I said I know it is difficult for you to talk about, but can you tell me what happened and she said "Yes, my daddy got on top of me." She told me that he took off, and she said "My short pants," and I asked her if that was all he took off and she said "My panties." She told me that he took off his clothes, his pants, and his underwear, and her exact words were, "He stuck his penis in me." She did say the word "penis." I asked where did he put his penis and she said "inside me." I asked her what his penis looked like and she wouldn't tell me at this point. She told me later. I asked her where this happened and she said Postelle. She said Postelle was close to Marvell. I asked her were they in a house or what and she said "a car." I asked where did you go after he did this and she said to his house. I asked who all was there and she said his wife and his kids and that she said that she did tell his wife and his wife made no comment about it. I asked her why she went to the hospital. She was taken to the hospital in Helena. I asked her why and she said "Because I was bleeding." I asked her who transported her to the —

MR. HALBERT: Your Honor, note my continuing objection to all this.

THE COURT: The Court notes it as continuing.

WITNESS: I asked her who had transported her to the doctor and she said his wife and my dad and that's all.

When I asked her if he had ever done this to her before, she stated he did it before. No. She said on the sand row. I asked her where the sand rows were located and she said Holly Grove. I asked her if she could remember how many times this had occurred and she said four. She said that she had never told anyone. She said it happened two times in Postelle and in Marvell and on the sand road. She said his penis was brown and hard. She said that while he was doing this to her she told him to quit and he kept on. I then changed the subject and started talking. I provided all these things to her counselor.

The hearsay testimony of Ms. McKuen contains critical testimony that was not given by the victim at trial. Ms. McKuen additionally testified about her training and that she was interested in the case because she did not want this crime to reoccur. Ms. McKuen told the jury that the victim told her that "he stuck his penis in me" and that his penis was brown and hard. The victim told the jury that defendant put "his private in my private," but did not attempt to describe the color or rigidity of the defendant's penis or other details of the crime. Ms. McKuen testified that the victim told her "she told him to quit and he kept on." The victim testified that she "told him to stop." Ms. McKuen testified that the victim told her the defendant committed the crime of rape against her on four occasions and gave a location for each of the four crimes. The victim testified, "My dad has never done this to me before."

Carol Crider, another social worker, gave the hearsay testimony that a "physician said that there looked like there may have been a sexual assault and asked me to go in and talk to the child and see if I could get any history from her about how she had been hurt." She testified that the victim told her that the defendant "put his private in the place where she pees." Ms. Crider testified that she then showed the victim an anatomically detailed doll and after she asked additional questions, the victim pointed to the doll's penis and said it was the doll's "private."

The State claimed that the hearsay testimony was a medical record, and the trial court apparently allowed it into evidence on that basis. The majority opinion adequately deals with the error in the ruling. The only question is whether it was harmless

error. It appears that the errors in admitting the foregoing hearsay evidence were most likely prejudicial to the defendant. However, any question about prejudice is answered by the compounding error in the ruling on Ark. R. Evid. 615.

Defendant moved for the rule when the trial commenced. The State responded that Ms. KcKuen was not subject to the rule on the ground that the victim trusted her. The majority opinion holds that the trial court erred in excluding Ms. McKuen from Rule 615. I agree. However, the trial court exacerbated the error by allowing Ms. McKuen to sit at the counsel table after she had completed her testimony. Ms. McKuen was never required to join the other witnesses in the witness room. The effect surely was for the trial court to convey to the jurors an imprimatur of approval of Ms. McKuen. The ultimate result most likely was that the jurors gave most favorable consideration to Ms. McKuen's hearsay testimony. That hearsay testimony was neither inconsequential nor cumulative: it was significant. Consequently, I cannot agree that the trial court's errors were harmless.

ROBERT L. BROWN, Justice, dissenting. I join Justice Dudley's dissent on the issue of error in permitting Donna McKuen to give hearsay testimony of what the ten-year-old victim told her. The reason I join is that the testimony of Ms. McKuen went beyond the testimony of the young victim. Accordingly, it could not be deemed merely cumulative and, therefore, harmless error. *See, e.g., Caldwell* v. *State*, 319 Ark. 243, 891 S.W.2d 42 (1995). Moreover, this is not a case comparable to *Gatlin* v. *State*, 320 Ark. 120, 895 S.W.2d 526 (1995), where we concluded that the hearsay testimony of two family members was harmless error because the victim took the stand and was subject to cross-examination by the defendant. In the instant case, the *Gatlin* doctrine would require defense counsel to cross-examine the victims on matters to which only Ms. McKuen testified. To require the defendant to cross-examine a 10-year-old victim on Ms. McKuen's testimony places the defense in an untenable situation. This was reversible error.

I do not agree with Justice Dudley's dissent, however, that allowing Ms. McKuen to sit at the counsel table with the young victim while the victim testified was reversible error. After the

victim testified, the trial was adjourned until the following day. Nothing in the record suggests that either the victim or Ms. McKuen was present in the courtroom after the victim's testimony.

Allowing Ms. McKuen to sit with the 10-year-old girl during her testimony was a matter of discretion for the trial court. I cannot say that the trial court abused its discretion by allowing this to occur when the victim was of tender years and obviously intimidated and frightened by the criminal process.