Michael F. JOHNINSON *v.* STATE of Arkansas

CR 93-1289 878 S.W.2d 727

Supreme Court of Arkansas
Opinion delivered July 5, 1994

432

*William R. Simpson, Jr.*, Public Defender, by: *Jerry J. Sallings*, Deputy Public Defender, for appellant.

*Winston Bryant*, Att'y Gen., by: *Vada Berger*, Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. In this appeal from his conviction as a habitual offender on a second-degree murder charge, for which he received a forty-year sentence, the appellant, Michael F. Johninson, raises two points for reversal. He contends that the trial court erred in (1) prohibiting him from introducing expert testimony regarding the culture and dynamics of urban street gangs and (2) denying his motion for discovery of the State's "gang files." Neither point has merit, and we affirm the judgment.

### Facts

Late in the afternoon of August 9, 1992, appellant Johninson and Frances Walton, a female companion, drove to the area near the intersection of Oak Street and 16th Street in Little Rock. Johninson intended to purchase some crack cocaine from either Michael Lairy or Michael Goins, two dealers in that vicinity from whom he had previously bought drugs. He spotted Lairy and motioned him to get into the car.

According to Johninson's testimony, while he was waiting for Lairy, eighteen-year-old Sedrick Fowler and nineteen-year-old Marquis Bullock approached the vehicle on bicycles. Johninson stated that Fowler thrust his hand through the door window and displayed some drugs. The record indicates that, after Johninson told

Fowler that "I want to see Michael Lairy," some vulgar and heated words were exchanged. Meanwhile, Lairy got in the car, and Johninson drove him to the intersection of Oak Street and 15th Street.

Not satisfied with the offered drugs, Johninson turned to pull the front seat forward to let Lairy out of the back seat, when Fowler and Bullock again approached the car. After Lairy's exit, Bullock struck Johninson on the side of the head. Testimony differed on whether the assailant hit Johninson with his fist or with a brick. Johninson testified that he was aware at the time that he was in a gang area controlled by the Oak Street Posse, a local organization reputedly affiliated with the Los Angeles-based Bloods, and that he had been informed that Fowler and Bullock were members of the gang. He also said that he was "thinking that these guys are fixing to take my life" and stated that Fowler was coming toward him with a shiny object in his hand.

As a result, Johninson reached for a gun and fired it from the open car window. The bullet struck Fowler in the chest and killed him. Bullock ran, several neighborhood youths began to come forward, and Johninson drove away. Some twenty-two days later, he was arrested by the police.

On September 14, 1992, the Prosecuting Attorney for the Sixth Judicial District filed an information charging Johninson with first-degree murder. In addition, the State sought sentencing enhancement on the basis that Johninson had been convicted of four or more felonies. The name "Johnson" had been used on the original information, and the prosecutor filed an amended information on November 20, 1992, correcting the spelling.

A jury trial was held on August 6 and 7, 1993. Johninson was convicted of second-degree murder, in violation of Ark. Code Ann. § 5-10-103 (Repl. 1993), and was sentenced as a habitual offender to forty years in the Arkansas Department of Correction. From that judgment, this appeal arises.

### I. Expert testimony on street gangs

In his first point for reversal, Johninson argues that the trial court erred in refusing to allow Pulaski County Coroner Steve Nawojczyk to testify as an expert on urban street gangs. Both before and during the trial, the defense proffered Mr. Nawo-

jczyk's testimony regarding, in general, gang loyalty, gang territorial control, and gang violence for the purposes of casting doubt on the credibility of the testimony of certain witnesses associated with the Oak Street Posse and showing that Johninson reasonably believed that Fowler would have used physical force against him had he not shot the youth. The trial court found that the testimony was irrelevant and would have invaded the province of the jury.

■■ The trial court has wide discretion in evidentiary matters. *Jones* v. *State*, 314 Ark. 289, 862 S.W.2d 242 (1993). The standard of review for a trial court's ruling on the admissibility of expert testimony is abuse of discretion. *Stewart* v. *State*, 316 Ark. 153, 870 S.W.2d 752 (1994); *Utley* v. *State*, 308 Ark. 622, 826 S.W.2d 268 (1992). Expert testimony is admissible when it will aid the jury in understanding the evidence presented or in determining a fact in issue. Ark. R. Evid. 702 (1994); *Harris* v. *State*, 295 Ark. 456, 748 S.W.2d 666 (1988). An important consideration in deciding whether the testimony will aid the trier of fact is whether the subject is beyond the ability of a lay person to understand. *Stewart* v. *State, supra.*

During the past few years, the nationwide proliferation of street gangs has captured the attention of the popular media, academic observers, and the legal system. The structures of urban gang life have been and are continuing to be explored in a growing body of work that embraces various disciplines.[1] Studies of juvenile gang subcultures have contributed to the creation of specialized fields of sociological and criminological inquiry, which, through expert witnesses, are gaining some recognition in the

---

[1]*See, e.g.*, Elijah Anderson, "The Code of the Streets," 273 *Atlantic Monthly* 80-94 (May 1994); Alan C. Brantley, Andrew DiRosa, "Gangs: A National Perspective," 63 *FBI Law Enforcement Bulletin* 1-6 (May 1994); Catherine H. Conly, *Street Gangs: Current Knowledge and Strategies* (National Institute of Justice, August 1993); Herbert C. Covey, Scott Menard, Robert J. Franzese, *Juvenile Gangs* (Springfield, Ill.: Charles C. Thomas, 1992); Jeffrey Fagan, "The Social Organization of Drug Use and Drug Dealing among Urban Gangs," 27 *Criminology* 633-69 (November 1989); John M. Hagedorn, "Gangs, Neighborhoods, and Public Policy," 38 *Social Problems* 529-42 (November 1991); C. Ronald Huff, ed., *Gangs in America* (Newbury Park, Calif.: Sage Publications, 1990); Martín Sánchez Jankowski, *Islands in the Streets: Gangs and American Urban Society* (Berkeley: University of California Press, 1991); Richard G. Zevitz, Susan R. Takata, "Metropolitan Gang Influence and the Emergence of Group Delinquency in a Regional Community," 20 *Journal of Criminal Justice* 93-106 (1992).

nation's courts.

Indeed, other jurisdictions have been developing case law on the use of expert testimony on gangs.[2] For instance, in *United States* v. *Robinson*, 978 F.2d 1554 (10th Cir. 1992), cited by Johninson, the Tenth Circuit Court of Appeals upheld the admissibility of the testimony of a police officer appearing as an expert witness that various blue items found in an apartment where a drug manufacturing operation was discovered, as well as the defendants' blue outer clothing and underwear, led him to the conclusion that the defendants were members of the Crips gang. This evidence was used after the police investigation had been completed to explain the items found in the possession of the defendants, and the prosecution was subsequently able to connect gang membership to the uncontroverted evidence that the main purpose of the Crips was to traffic in crack cocaine. Significantly, the expert testimony focused on a single gang.

In another Tenth Circuit case, the testimony of a police detective who served as an expert witness was held admissible where he explained that the main purpose of the Black Mafia Crip Dawgs, a gang to which the defendant belonged, was to distribute cocaine and crack cocaine. *United States* v. *Hartsfield*, 976 F.2d 1349 (10th Cir. 1992). More generally, the Seventh Circuit Court of Appeals has recognized that evidence of gang membership has probative value under appropriate circumstances, such as the establishment of a joint criminal venture. *United States* v. *Lewis*, 910 F.2d 1367 (7th Cir. 1990).

This latter view echoes the holding in *United States* v. *Abel*, 469 U.S. 45, 49 (1984), the centerpiece of Johninson's argument, where the United States Supreme Court declared that testimony by a fellow inmate showing that a defense witness and the defendant were both members of the same prison gang was "sufficiently probative" of the witness's "possible bias" toward the

---

[2]A good working definition of "gangs" appears in John E. Theuman, Annotation, *Admissibility of Evidence of Accused's Membership in Gang*, 39 A.L.R.4th 775, 776 n. 1 (1985): "[G]roups of persons which are reputed to engage in unlawful or antisocial activity, and which have no conventionally recognizable political or social purpose." The annotation also contains a useful collection of cases regarding testimony about membership in particular gangs. Throughout the article, relevance is emphasized as the critical factor with respect to admissibility.

defendant to warrant its admission into evidence. The Court observed that

> The attributes of the Aryan Brotherhood — a secret prison sect sworn to perjury and self-protection — bore directly not only on the *fact* of bias but also on the *source* and *strength* of [the witness's] bias. The tenets of this group showed that [the witness] had a powerful motive to slant his testimony towards [the defendant], or even commit perjury outright.

469 U.S. at 54. (Emphasis in original.) In upholding the District Court's decision to admit the evidence of gang membership, the Supreme Court underscored the wide discretion accorded trial courts in determining the admissibility of evidence.

An Illinois appellate decision, *In the Interest of C.L.*, 534 N.E.2d 1330 (Ill. App. 1 Dist. 1989), also cited by Johninson, has some bearing on the question of the reasonableness of his belief that he was in harm's way. There, two youths were charged with aggravated assault against two other persons. One of the victims was allowed to testify that the colors yellow and black, worn by the two defendants, were the colors of the Vice Lords street gang. The issue on appeal turned on the construction of the statutory term "reasonable," as employed in the Illinois Criminal Code of 1961, Ill. Rev. Stat. 1981, ch. 38, par. 12-1. The appellate court held that the victim's knowledge of the gang colors was "relevant and admissible to show whether a reasonable person with that knowledge would have apprehended a battery from another who was wearing those colors, acting belligerently toward the person and a loved one and carrying a gun." 534 N.E.2d at 1335.

 Under the circumstances of the present case, the cases relied upon by Johninson (*Abel, Robinson*, and *Interest of C.L.*) and the other authorities cited above are of no assistance to the appellant.[3] To begin with, there was never any dispute concerning Mr. Nawojczyk's credentials as an expert witness on street

---

[3]We note that, in its brief, the State made no effort to address the issues raised in — or even to acknowledge with citations — the *Abel, Robinson*, and *Interest of C.L.* decisions, which we have analyzed above, along with other relevant cases. The State chose to rely, instead, on general language in Arkansas cases dealing with expert testimony, *e.g., Utley* v. *State, supra.*

gangs. The State's objections centered on relevance, and even under *United States* v. *Robinson, supra,* where expert testimony was admitted to aid the jury in understanding the primary purpose of a specific gang, it is difficult to discern the relevance of the proffered expert testimony here. Yet by no means do we intend to suggest that expert testimony on youth gangs is inappropriate. To the contrary, when its relevance has been demonstrated, expert testimony on the membership, organization, purposes, and conduct of particular street gangs may be admissible, though not, of course, in this instance.

In the present case, Mr. Nawojczyk commented on the "fluid" nature of gangs in general, remarking that "[t]hey change."[4] He admitted that he had no personal knowledge of the membership of either Sedrick Fowler or Marquis Bullock in the Oak Street Posse. Mr. Nawojczyk was unable to offer testimony on any specific tenets of the Oak Street Posse relating to perjury or self-protection. Further, he was unable to provide specific information on the penalties imposed by the Oak Street Posse for acts of disloyalty.

The broad overview of the urban gang subculture that the prospective expert witness provided, therefore, had no direct, particular reference to the victim and his associate. It is worth noting that an expert witness was not required in Johninson's central case, *United States* v. *Abel, supra,* to establish the "possible bias" of prosecution witnesses — only a fellow gang member — and it seems unlikely that Mr. Nawojczyk's generalized testimony would have been of any more significant relevance to the question of bias in that situation than in the present case.

Where, in fact, possible bias was at issue here, expert testimony was unnecessary. The defense had ample opportunity to cross-examine the victim's alleged fellow gang members. On cross-examination, Michael Lairy acknowledged that the "kids that been brought up in the neighborhood . . . help each other" to the

---

[4]The same point has been made by Catherine H. Conly in her report for the National Institute of Justice, where she wrote that "Considerable variation exists in gang membership, organization, involvement in crime, and the social contexts in which gangs thrive. . . . [G]angs cannot be stereotyped." *Street Gangs: Current Knowledge and Strategies, supra,* at 5. Similarly, Covey, Menard, and Franzese stress "the wide variation in the nature of gangs and gang behavior." *Juvenile Gangs, supra,* at ix.

extent of doing "[w]hatever it takes," including hurting those who "diss" (show disrespect toward) or "jump" (attack) them. He conceded that his group of friends was known to the police as the Oak Street Posse. Marquis Bullock stated that he struck Johninson on the head with his fist (Johninson claims it was a blow with a brick) just before the shooting because Fowler, who had been "having, like, words" with Johninson, was angry, and "he was like a brother to me, and we just took up for each other." Moreover, Officer Kenny Baer of the Little Rock Police Department testified that both Fowler and Bullock had informed him that they were members of the Oak Street Posse.

In sum, the jury had before it a concentrated statement of the "code of the streets," not from Steve Nawojczyk — an outsider who had attained a measure of expertise in the subject — but from two avowed affiliates of a local group known by the name "Oak Street Posse" and a police officer who, unlike the expert, had actually known the victim and his friend. Obviously, the expert could have shed no greater light on witness credibility than the witnesses themselves. If there was any relevant aspect of gang behavior that might have posed an impediment to the jurors' understanding, the witnesses provided the necessary clarification. As this court has long held, the determination of the credibility of witnesses is a function of the jury. *Scroggins* v. *State*, 312 Ark. 106, 848 S.W.2d 400 (1993). What would have amounted to expert testimony by Mr. Nawojczyk on witness credibility would have constituted an invasion of the jury's province. *See Utley* v. *State, supra*. The trial court did not abuse its discretion by refusing to admit expert testimony on gang loyalty and witness bias.

Neither did the trial court abuse its discretion in refusing to admit the proffered expert testimony regarding the propensity of street gangs toward violence in order to demonstrate that Johninson had a reasonable belief that Sedrick Fowler was about to employ unlawful deadly force against him. The defense proceeded at trial under the defense of justification, which is a matter of intent and a question of fact for the jury. *See Taylor* v. *State*, 28 Ark. App. 146, 771 S.W.2d 318 (1989), *citing Ringer* v. *State*, 74 Ark. 262, 85 S.W. 410 (1905).

Although the Illinois decision cited earlier, *In the Interest of C.L., supra*, appears at first glance to have some rel-

evance to the present situation, the case is readily distinguishable. There, the testimony concerning gang colors in relation to the reasonable belief of imminent harm came from one of the victims rather than from one of the assailants. In the present case, Johninson was able to testify at length about his state of mind at the time of the shooting. As mentioned before, Johninson stated that after he had been struck in the head with a brick by Bullock, he saw Fowler approaching him with what appeared to be a shiny object in his hand. He testified that he believed that Fowler and Bullock intended to "take my life." He also averred that he knew that he was in gang territory; that Fowler, Bullock, and Lairy were members of a gang; that gang members had no respect for life; and that he was aware of what gang members were capable of doing. The jury had before it sufficient evidence from which it could draw its own conclusions with respect to Johninson's defense of justification. Under the circumstances, an expert witness could have added nothing to Johninson's first-person account.

■■ When justification is offered as a defense, evidence of a victim's violent character is relevant to the issue of which party was the aggressor and whether the accused reasonably believed himself to be in danger of suffering unlawful deadly force. *Thompson* v. *State*, 306 Ark. 193, 813 S.W.2d 249 (1991). Johninson had the right to introduce specific instances illustrative of Fowler's violent character that were directed at him or that were within his knowledge. *Id.* He did so in referring to the shiny object that he claimed he saw in the victim's hand. It would appear, however, that Johninson wished to use expert testimony on gang conduct in general in order to establish, inferentially, the violent character of Fowler in particular. Such an expansion of the methods of proving character is not contemplated by the language of Ark. R. Evid. 405.

To reiterate, the trial court did not abuse its discretion in refusing to admit expert testimony on urban street gangs.

## II. Disclosure of "gang files"

For his second point on appeal, Johninson contends that the trial court erred in refusing to order the prosecution to disclose its files concerning particular individuals and their suspected

affiliation with area gangs. At a pretrial hearing on November 2, 1992, the defense made an oral motion requesting discovery of files maintained by the prosecutor's office containing information on the suspected gang membership of certain individuals in order to show that "the majority of the witnesses in this case" belonged to the same gang. The trial court denied the motion on the basis that any such files constituted work product of the prosecuting attorney unrelated to the present case; that they did not comprise exculpatory material to which the defense was entitled; and that they consisted of information which the defense could gather on its own.

██ The motion was later made again and was again denied. In response to a renewed motion at the outset of the trial, the deputy prosecutor stated that although the prosecutor's office maintained files on street gangs, it had no information "on these particular witnesses in this case, or the victim in this case." In other words, the material that Johninson sought by discovery apparently did not exist. Hence, he could not have been prejudiced by the trial court's denial of his motion.

██ ██ Further, the prosecutor's gang files were exempt from discovery as work product under Ark. R. Crim. P. 17.5(a) (1994), which provides:

> Except as provided in Rule 17.1(a)(i) [names and addresses of persons whom the prosecutor intends to call as witnesses] and (iv) [reports or statements of experts made in connection with the particular case], disclosure shall not be required of research or of records, correspondence, reports or memoranda to the extent that they contain the opinions, theories or conclusions of the prosecuting attorney or members of his staff or other state agents.

The defense in the present case had available to it the names of all of the witnesses to the killing and could have taken upon itself the investigation of the matter of gang affiliation. *See*, analogously, *Turner* v. *State*, 258 Ark. 425, 527 S.W.2d 580 (1975) (prosecutor's investigation of prospective jurors held work product and subject to independent investigation by defense). A defendant in a criminal case cannot rely upon discovery as a substitute for his own investigation. *Morris* v. *State*, 302 Ark. 532, 792

S.W.2d 288 (1990); *David* v. *State*, 295 Ark. 131, 748 S.W.2d 117 (1988); *Dumond* v. *State*, 290 Ark. 595, 721 S.W.2d 663 (1986).

 Johninson acknowledges that part of the gang information sought through discovery was revealed in Officer Baer's testimony at trial that Fowler and Bullock had told him they were members of the Oak Street Posse. Even so, he argues, the information came too late to be of use in the defense preparation for trial. But, as counsel conceded in a colloquy with the trial court, the defense had been furnished with Officer Baer's name prior to trial. Moreover, Officer Baer stated that defense counsel had not interviewed him about his testimony before the trial began. Johninson cannot complain now of untimely revelations.

██ ██ In any event, Johninson already had access to the information he requested through his discovery motion. He testified himself that he knew Fowler, Bullock, and Lairy were gang members. Defense counsel stated in a hearing held on May 13, 1993, that he had lists which, though inadmissible, showed that "a number of these people are gang members." The defense conducted extensive cross-examinations of State witnesses at trial. It is incumbent upon the appellant to demonstrate actual prejudice resulting from an asserted discovery violation. *Morris* v. *State, supra*. No prejudice has been shown.

Under Ark. R. Crim. P. 17.1(d) (1994):

> Subject to the provisions of Rule 19.4 [concerning protective orders], the prosecuting attorney shall, promptly upon discovering the matter, disclose to defense counsel any material or information within his knowledge, possession, or control, which tends to negate the guilt of the defendant as to the offense charged or would tend to reduce the punishment therefor.

While the State is obliged by the rule to disclose to the defendant any exculpatory evidence, the prosecution should not be required to disclose information already in the possession of the defendant or obtainable through the exercise of reasonable diligence. *See Jarrell* v. *Balkcom*, 735 F.2d 1242 (11th Cir. 1984), *cert. denied*, 471 U.S. 1103 (1985); *United States* v. *Prior*, 546 F.2d 1254 (5th Cir. 1977).

The trial court did not err in refusing to order the prosecution to disclose its gang files to the defense.

Affirmed.