Jacinto HENDERSON *v.* STATE of Arkansas

CR 98-546                                         980 S.W.2d 266

Supreme Court of Arkansas
Opinion delivered December 10, 1998

*Ray Hartenstein* and *Frank Shaw*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kelly Terry*, Ass't Att'y Gen., for appellee.

Tom Glaze, Justice. Appellant Jacinto Henderson brings this appeal from his capital murder conviction and sentence to life imprisonment without parole. Henderson admits that he shot and killed Byron Sheppard, but he claims that he was justified in doing so. His sole point for reversal is based on his claim that the trial court erred in refusing him and his expert witness, Steve Nawojczyk, the right to give testimony bearing on Sheppard's alleged prior gang affiliation and involvement in drugs.

He submits this testimony, if admitted into evidence, would have shown that, at the time he shot Sheppard, he reasonably believed that he could not avoid the use of deadly physical force by retreating to his home. The State responds, saying the trial court's ruling did not prohibit Henderson from offering such gang and drug evidence. Rather, the trial court merely ruled that Henderson could present testimony that, at the time of the shooting, he knew of Sheppard's gang affiliation, drug involvement, and propensity for violence, but if Henderson offered that testimony, he would open the door for the State to offer rebuttal evidence showing Henderson had previously engaged in drug trafficking with Sheppard. The trial court grounded its ruling on the State's right to show Henderson's intent and motive when deciding whether he was justified in using deadly physical force against Sheppard.

The facts are largely undisputed. On January 18, 1997, at about midnight, Henderson and some of his friends went to a nightclub in Jonesboro named "Envisions." He directed a derogatory remark towards a group of people, but Sheppard took the remark personally. Sheppard confronted Henderson, and in doing so, struck Henderson in the head. Henderson ran away, went home, and armed himself with a loaded shotgun. He then got in his car, and returned to the club. According to Henderson, when he departed his car, he saw Sheppard push individuals surrounding him out of the way and step towards Henderson. He claims he fired his shotgun when Henderson saw Sheppard's right hand come up in the air. Henderson claimed that when he fired, Sheppard turned to run away. The bullet hit Sheppard in the back.

At trial, Henderson raised the defense to the capital murder charge that deadly physical force was necessary to defend himself, and the trial court ultimately gave the following justification instruction:

> This is a defense only if:
>
> First, Henderson reasonably believed that Sheppard was using or was about to use unlawful physical force; and
>
> Second, Henderson only used such force as he reasonably believed to be necessary.

> A person is not justified in using physical force if he knows that the use of deadly physical force can be avoided with complete safety by retreating.

> Henderson, in asserting this defense, is required only to raise a reasonable doubt in your mind. Consequently, if you believe that this defense has been shown to exist, or if the evidence leaves you with a reasonable doubt as to his guilt of capital murder, then you must find him not guilty. *See* AMCI2d 705; *see also* Ark. Code Ann. § 5-2-607 (Repl. 1997).

In support of his justification defense, Henderson introduced testimony that he believed Sheppard was a gang member, and that he further believed Sheppard to have been involved in two prior incidents where he and his associates attempted to shoot Henderson. He asserted these prior attempts on his life had occurred at his home, and for that reason, Henderson did not feel safe there. Moreover, Henderson testified that these prior incidents, including Sheppard's having struck him, caused Henderson to fear Sheppard as a violent person and, in turn, led him to shoot Sheppard.

After hearing the foregoing evidence, the trial court ruled that Henderson was entitled to the justification-defense instruction. However, Henderson argues that, while the trial court correctly gave the justification instruction, it erred when it disallowed additional evidence bearing on Sheppard's reputation for violence. Specifically, Henderson proffered testimony that he knew Sheppard had been to prison for selling drugs, and that his expert witness, Mr. Nawojczyk, would testify that, because Sheppard was both a gang member and a drug seller, Sheppard necessarily had a propensity to be violent. In his proffer, Nawojczyk conceded that he had no idea whether Sheppard was a gang member at the time he was shot. Yet, because of a tattoo on Sheppard's person, the expert said Sheppard could have been in a gang at the time of his death.

■■ The law is well settled that Henderson had the right to introduce specific instances illustrative of Sheppard's violent character that were directed at him or that were within his knowledge. *Johninson v. State*, 317 Ark. 431, 878 S.W.2d 727 (1994); *Thompson v. State*, 306 Ark. 193, 813 S.W.2d 249 (1991). Accordingly, Henderson presented considerable testimony bearing

on Sheppard's prior violence towards Henderson, which was admitted without objection. However, Henderson wanted to prove Sheppard's violence existed merely because Sheppard had been a gang member known to have sold drugs. As previously noted, the trial court ruled that it would allow such testimony, but in doing so, it would permit the State to rebut that testimony with its own proof that Henderson had previously engaged in buying drugs from Sheppard. The trial court found that such proof was relevant as to Henderson's intent and motive at the time of the shooting. The trial court was correct.

■ When justification is offered as a defense, evidence of a victim's violent character is relevant to the issue of which party was the aggressor and whether the accused reasonably believed himself to be in danger of suffering unlawful deadly force. *Johninson*, 317 Ark. at 441, 878 S.W.2d at 732. In this respect, Henderson testified at length concerning his fearful state of mind at the time of the shooting. However, when Henderson offered evidence to show that Sheppard's drug activity caused Henderson to be fearful of Sheppard based on that fact alone, the trial court, as previously discussed, determined the State could rebut such evidence with drug proof of its own that would help the jury decide whether Henderson, having previously engaged in drug trafficking with Sheppard, was reasonably justified in using deadly force on Sheppard in these circumstances. The trial court's expressed key determination was whether Henderson could be justified in fearing Sheppard based on actions Henderson engaged in himself and had also engaged in with Sheppard.

■ Evidence of other crimes or bad acts committed by an *accused*, for which he is not charged in the present action, is generally not admissible. *See* Ark. R. Evid. 404. (Emphasis added.) Nevertheless, evidence of a person's other acts may be admissible if it is probative of some relevant fact other than character, such as motive, intent, and state of mind. *Rowdean v. State*, 280 Ark. 146, 655 S.W.2d 413 (1983); *White v. State*, 290 Ark. 130, 717 S.W.2d 784 (1986); *Williamson v. State*, 267 Ark. 46, 590 S.W.2d 847 (1979). *See also* 41 Ark. L. Rev. 584, 598 (1988). In other words, evidence offered under Rule 404(b) is not offered as proof of character, but for some non-character purpose. In *White*, the

court further pointed out that Rule 404(b) permits the introduction of testimony of other criminal activity if it is independently relevant to the main issue — relevant in the sense of tending to prove some material point rather than merely to prove the defendant is a criminal — then evidence of that conduct may be admissible with a proper cautionary instruction by the court. 290 Ark. at 140, 717 S.W.2d at 789.

██ Here, Henderson chose not to testify regarding Sheppard's drug-related history, since to do so would have allowed the State to show Henderson's own prior drug relationship with Sheppard. Such evidence would clearly have been relevant concerning what Henderson's intent or state of mind might have been when he went home, armed himself with a loaded gun, and returned to Envisions Club to shoot and kill Sheppard.

In conclusion, we further hold that our decision in *Johninson* dictates the result we reach in affirming here. There, we pointed out that the defendant Johninson proceeded at trial under the defense of justification, which is a matter of intent and, as such, a question of fact for the jury. 317 Ark. at 440, 878 S.W.2d at 732. The *Johninson* court determined that the defendant had testified at great length concerning his state of mind at the time of the shooting of his victim, Fowler. Defendant Johninson also related that he knew Fowler was a gang member, that he was violent, and that he intended to take Johninson's life. This court concluded that the jury had sufficient evidence from which it could draw its own conclusions with respect to Johninson's justification defense and an expert witness could have added nothing to Johninson's first-person account. *Id.* at 441; 878 S.W.2d at 732.

██ The same can be said of Henderson's case. As already discussed, Henderson was able to testify to Sheppard's gang association and Henderson gave his first-person account of Sheppard's prior attempts on his life. Here, like the defendant in *Johninson*, Henderson seeks to use expert testimony on gang conduct in general in order to establish, inferentially, the violent character of the victim. Such an expansion of the methods of proving character is not contemplated by the language of Ark. R. Evid. 405. *Johninson*, 317 Ark. at 441, 878 S.W.2d at 733.

In accordance with Ark. Sup. Ct. R. 4-3(h), the record has been reviewed for rulings made adversely to Henderson, and we find no reversible error.

For the reasons stated above, we affirm.