2012 Ark. App. 130

**Patrick Cinque SMITH, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 11–412.**

Court of Appeals of Arkansas.

Feb. 8, 2012.

Rehearing Denied March 14, 2012.

Clint Eugene Miller, Dan Hancock and Joe Tobler, Little Rock, for appellant.

Rebecca B. Kane, Little Rock, for appellee.

DOUG MARTIN, Judge.

Appellant Patrick Smith was charged with multiple counts of aggravated robbery, theft of property, aggravated residential burglary, aggravated assault, battery, sexual assault, and committing a terroristic act as a result of a mass aggravated robbery of a number of individuals living in a trailer park in southwest Little Rock. Following a three-day jury trial, a Pulaski County jury convicted Smith of fourteen felony offenses, plus a firearm enhancement. Smith was sentenced to an aggregate of thirty years. In his sole argument on appeal, Smith contends that the State violated the Rules of Criminal Procedure by failing to disclose the existence of a letter, written by Smith, that the State utilized during its cross-examination of him.

Smith does not challenge the sufficiency of the evidence on appeal, so only a brief recitation of the facts is necessary. On the

night of December 17, 2009, Smith knocked on the door of a trailer in which Mario Alfonso Albayeros and Blanca Mazriegas lived. When Albayeros opened the door, Smith displayed a gun and demanded their wallets. Mazriegas testified that Smith pointed the gun at her, demanded money from her, fondled her breasts, and put his hand down her pants. Arturo Sanchez, another resident of the trailer park, testified that he was going outside to his car when Smith pointed a gun at his head and demanded his money. Smith forced Sanchez back inside his trailer, where several other individuals, including Sanchez's cousin, Ruben Osario, were sleeping. Smith pointed his gun at them and demanded their money and phones. Smith exited the trailer, and Sanchez looked out a window and saw that Smith was then pointing the gun at Osario's cousins, Jorge and Pedro, who were arriving home from work. Osario found a metal pipe, exited the trailer and threw the pipe at Smith. The pipe missed Smith, who turned the gun on Osario and pulled the trigger, but the gun misfired. Smith began to flee, but Sanchez and another individual chased him and knocked him down. Smith was bound with electrical wire and beaten by his victims. After the police arrived, Smith was arrested and transported to the hospital. A twenty-two count felony information was subsequently filed on February 4, 2010.

Smith testified in his own defense at trial and denied having a gun on the night in question. On cross-examination, the State asked whether Smith recalled writing a letter to the circuit judge in August 2010. Smith's attorney immediately objected that he did not know anything about the letter or have a copy of it. In a bench conference, the court replied that Smith sent the letter directly to the court, and the letter was in the clerk's file. Counsel complained that the State obviously had the letter and did not turn it over to the defense. The court responded that, when a letter such as Smith's is sent to the court, the court does not send it to the prosecutor, but just "put[s] it in the file and whoever wants to read it can read it."[1] Defense counsel, however, argued that the State had an affirmative obligation to give the defense any statements the defendant had made, and as the State had the letter prior to trial and did not turn it over, the court should exclude it.

The prosecutor retorted that the letter had only been discovered that morning, saying,

I was in there looking for the notice of the hearing of the trial today and found this directly underneath, read it, thought, hmmm, interesting and made a copy of it this morning. And the fact that he wrote it, it is not a surprise to him which is—and if he's—he's under an obligation to tell his lawyer that he wrote the judge.

The prosecutor went on to say that the State had been aware of the letter for only about four hours and that the letter had been part of the court's open file. Defense counsel complained that the State had the letter and knew about it prior to Smith's taking the stand and thus had an obligation to turn it over. The prosecutor asserted, however, that it was unnecessary to turn the letter over, stating that the

---

1. We note at the outset that Rule 2.9(b) of the Arkansas Code of Judicial Conduct provides guidance regarding correspondence such as this:

If a judge inadvertently receives an unauthorized ex parte communication bearing upon the substance of a matter, the judge shall make provision promptly to notify the parties of the substance of the communication and provide the parties with an opportunity to respond.

State had "made a copy of what is in the court's file. That's it." The prosecutor also suggested that the text of the letter was "drastically different" than Smith's testimony, and Smith "shouldn't be able to get up here and lie and say all these things."

Defense counsel responded that the law provides that, if the State had any statements written by Smith, which it did, the State was required to turn them over as soon as they were discovered, rather than waiting until Smith had already testified before doing so. The prosecutor replied that the letter was not being used to prove that Smith committed the crimes, but rather to impeach his testimony by "cross-examin[ing] him with his own words that he wrote to the court."

Defense counsel asked the court to exclude the letter, but the court denied the motion, stating that it was "part of the public record in this case ... in the clerk's file." The court then offered to let counsel have a few minutes to review the letter, to which counsel replied, "I would have liked to [have] had an opportunity to talk to Mr. Smith before he testified about it." The court then ruled that the State could use the letter and granted a brief recess.

After the recess, the prosecutor resumed cross-examining Smith. Smith denied writing the letter, saying that it was not his handwriting. Defense counsel again objected, contending that, because Smith denied writing the letter, the State could not introduce it. During another bench conference, however, the court took judicial notice that the letter came from the jail addressed to the court with Smith's jail identification number on it and overruled the objection. The prosecutor then began reading from the letter, asking Smith whether he had written various portions of it. Smith agreed that some things written in the letter were true, but he denied other portions of the letter, including the statement that he had a gun on the night of the incident.

As noted above, the jury convicted Smith on fourteen felony counts. On appeal, Smith argues that the circuit court abused its discretion in rejecting his argument that the State violated the rules of discovery and in denying his objection to the State's use of the letter to impeach Smith's testimony. Smith urges that he was prejudiced in two respects: first, without having knowledge of the letter, his attorneys could not give him effective advice as to whether he should take the stand and testify; second, use of the letter unduly undermined his credibility, which Smith argues was of particular importance because the case hinged on the credibility of the witnesses.

It is well settled that the purpose of the discovery rules is to require the State to disclose its evidence to the defendant in time for the defendant to make beneficial use of the information. *N.D. v. State*, 2011 Ark. 282, 383 S.W.3d 396; *Thomas v. State*, 312 Ark. 158, 847 S.W.2d 695 (1993). The supreme court has said that "the key in determining if a reversible discovery violation exists is whether the appellant was prejudiced by the prosecutor's failure to disclose." *Bray v. State*, 322 Ark. 178, 180, 908 S.W.2d 88, 89 (1995). The burden is on the appellant to prove that the discovery violations were sufficient to undermine the confidence in the outcome of the trial. *N.D., supra*. Even if a discovery violation has occurred, the appellate courts will not reverse if the error is harmless. *Id.; Mosley v. State*, 323 Ark. 244, 914 S.W.2d 731 (1996).

Under Rule 17.1 of the Arkansas Rules of Criminal Procedure, the prosecuting attorney "shall disclose to defense counsel, upon timely request, ... material and information which is or may come within the

possession, control, or knowledge of the prosecuting[6] attorney ... [including] any written or recorded statements and the substance of any oral statements made by the defendant[.]" Ark. R.Crim. P. 17.1(a)(ii). Rule 17.2(a) requires the prosecuting attorney to "perform his obligations under Rule 17.1 as soon as practicable." Ark. R.Crim. P. 17.2(a). Rule 19.2, in turn, provides as follows:

> If before trial, but subsequent to compliance with these rules, or an order entered pursuant thereto, a party discovers additional material or information comprehended by a previous request to disclose, he shall promptly notify opposing counsel or the other party of the existence of such material or information. If additional material or information is discovered during trial, the party shall notify the court and opposing counsel of the existence of the material or information.

Ark. R.Crim. P. 19.2.

■ Rule 19.2 imposes a continuing duty on the prosecutor to disclose this information. *Travis v. State*, 371 Ark. 621, 269 S.W.3d 341 (2007). The required notification must be accomplished in sufficient time to permit beneficial use by the defense. *Robinson v. State*, 317 Ark. 407, 878 S.W.2d 405 (1994); *Hinzman v. State*, 53 Ark.App. 256, 922 S.W.2d 725 (1996). In the event of noncompliance, Rule 19.7 allows the trial judge to order the undisclosed evidence excluded, grant a continuance, or enter such an order as he or she deems proper under the circumstances. The key in determining whether a reversible discovery violation exists is whether the appellant was prejudiced by the prosecutor's failure to disclose. *Id.; Tester v. State*, 342 Ark. 549, 30 S.W.3d 99 (2000).

■ Applying the plain language of the rules of criminal procedure, it would seem at first glance that the State's conduct in this case constituted a violation of our discovery rules, as the word "shall" has been consistently construed by our courts to mean mandatory compliance. *See Aikens v. State*, 368 Ark. 641, 644, 249 S.W.3d 788, 790 (2007) (holding that,[7] as Arkansas Rule of Criminal Procedure 32.1 states that potential juror information "*shall* be made available to the defendant or his counsel upon request," it was "clear that the clerk of the circuit court *must* make this information available when requested by the defendant's counsel.") (emphasis added); *Harris v. State*, 2011 Ark. App. 233, 2011 WL 1166866 (use of the word "shall" makes compliance with a statute mandatory).

■ Our supreme court, however, has interpreted the discovery rules to focus on the prejudice to the defendant. As mentioned above, even if a discovery violation occurs, the appellate courts will not reverse if the error is harmless, and it is the appellant's burden to prove that the discovery violations were sufficient to undermine confidence in the outcome of the trial. *N.D. v. State, supra.* In *Barnes v. State*, 346 Ark. 91, 55 S.W.3d 271 (2001), the appellant, Barnes, argued that the State should not have been allowed to cross-examine him with a letter he wrote in which he made some incriminating statements. In that case, the State, which had received a copy of the letter the previous weekend, did not disclose the letter until it was cross-examining Barnes during the defense's case-in-chief. The circuit court denied Barnes's motion for mistrial but allowed counsel a brief recess to discuss the letter with Barnes. *Barnes*, 346 Ark. at 102, 55 S.W.3d at 279. In affirming, the supreme court wrote as follows:

> Barnes argues that the trial court should have excluded the letter and prevented the prosecutor from mentioning it. However, he does not contend how

he was prejudiced by the letter's introduction. We have held that when the State fails to provide information during discovery, the burden is on the appellant to show that the omission was sufficient to undermine the confidence in the outcome of the trial. *Esmeyer v. State,* 325 Ark. 491, 930 S.W.2d 302 (1996). Prejudice, though, does not exist when the defendant already has access to the information that the State did not disclose. *Id.* Here, because Barnes wrote the letter, he knew of its existence, and cannot claim to have been prejudiced by the State's late disclosure of it.

*Id.* at 103, 55 S.W.3d at 279.[2] *See also Esmeyer v. State,* 325 Ark. 491, 499, 930 S.W.2d 302, 307 (1996) (discussing Ark. R.Crim. P. 17.1(d) and holding that, when the State fails to provide information, the burden is on the appellant to show that the omission was sufficient to undermine confidence in the outcome of the trial; "[p]rejudice ... does not exist when the defendant already has access to the information that the State did not disclose."); *Johninson v. State,* 317 Ark. 431, 443, 878 S.W.2d 727, 734 (1994) (discussing Rule 17.1(d) and holding that, "[w]hile the State is obliged by the rule to disclose to the defendant any exculpatory evidence, the prosecution should not be required to disclose information already in the possession of the defendant or obtainable through the exercise of reasonable diligence.").

In the instant case, the State relies on *Barnes, supra,* to argue that Smith was not prejudiced by the prosecutors' use of

the letter during cross-examination.[3] As noted above, *Barnes* holds that where a defendant has knowledge of or access to the information that the State did not disclose, prejudice will not be found to exist. In the present case, Smith wrote the letter to the circuit judge and thus knew of its existence. Given the language of *Barnes,* we are unable to conclude that Smith has demonstrated that he was prejudiced by the State's failure to disclose the letter until its cross-examination of Smith. In the absence of demonstrable prejudice, we must affirm Smith's convictions.

Affirmed.

GRUBER, J., agrees.

BROWN, J., concurs.

WAYMOND M. BROWN, Judge, concurring.

I agree that this case must be affirmed, but write separately to set forth a somewhat different analysis.

## I. *No Discovery Violation Occurred*

The majority opinion suggests, but stops short of holding, that a discovery violation occurred in this case. Such a conclusion would be incorrect for two reasons. First, our supreme court has held that the prosecution is not required to disclose information that is already accessible to the defendant.[1] It is undisputed that Smith's handwritten letter to the trial court was contained in the circuit court's public file and was freely available to him.

---

**2.** While *Barnes* clearly bears on the issue of prejudice to the defendant, that opinion does not squarely address the question of whether the prosecutor's conduct constituted a discovery violation.

**3.** We note that the State's brief does not address whether a discovery violation occurred

but rather focuses on whether Smith suffered any prejudice.

**1.** *Lowry v. State,* 364 Ark. 6, 216 S.W.3d 101 (2005); *Johninson v. State,* 317 Ark. 431, 878 S.W.2d 727 (1994).

Therefore, no discovery violation can be said to have occurred.

Second, the letter was rebuttal evidence and was therefore not required to be disclosed.[2] In *McDaniel v. State,* under similar circumstances, our supreme court held that there was no discovery violation.[3] In that case, the defendant testified, on direct examination during the defense's case-in-chief, that he had never been arrested or convicted of a felony. On cross-examination, the prosecutor questioned him about two felony arrests that the prosecutor had learned of the day before but had not disclosed to the defense. On appeal, McDaniel's attorney argued—as counsel for Smith does here—that if the State had supplied him with the information about the prior arrests, he would not have allowed McDaniel to put his credibility at risk by testifying as he did. The supreme court rejected this argument, holding that the cross-examination about the prior arrest was proper because McDaniel had specifically denied having had a prior arrest on direct, so the testimony concerning the prior arrests was "purely and genuinely rebuttal" and the State was not required to furnish the information about the arrests in discovery.[4]

Similarly, in this case Smith testified on direct examination that he did not rob anyone, did not have a gun or point it at anyone, and in general gave an account of events that was radically different from that of the State's witnesses. The prosecutor then cross-examined Smith using the newly-discovered letter[5] in direct response to Smith's testimony during the defense's case-in-chief, for the purpose of refuting that testimony. As such, it was by nature rebuttal evidence that the State was not obligated to furnish to the defense under the rules of discovery. Since the only evidence the defense presented in its case-in-chief was Smith's testimony, it was inevitable that any rebuttal evidence the State could present would challenge or undermine his credibility.

## II. *No Showing of Prejudice*

I write this concurrence also because the majority opinion suggests that only the "language of *Barnes* " prevents the holding that a reversible discovery violation occurred. This understates both the strength of the rule and the quantum of evidence supporting the jury's verdict against Smith.

Our supreme court has held on multiple occasions that when the State fails to provide information during discovery, the appellant must show prejudice—that is, must show that the omission was sufficient to undermine the confidence in the outcome of the trial—to obtain a reversal, and prejudice does not exist when a defendant already has access to the information the State did not disclose.[6] In *Barnes,* the

---

2. *Pyle v. State,* 314 Ark. 165, 862 S.W.2d 823 (1993); *Asher v. State,* 303 Ark. 202, 795 S.W.2d 350 (1990); *Kincannon v. State,* 85 Ark.App. 297, 151 S.W.3d 8 (2004).

3. 294 Ark. 416, 743 S.W.2d 795 (1988).

4. *Id.* Genuine rebuttal evidence is evidence offered in response to that presented by the opposing party. *Birchett v. State,* 289 Ark. 16, 708 S.W.2d 625 (1986). The rationale for not requiring disclosure is that the State cannot know or disclose what evidence is needed for

rebuttal until the defense presents its case. *Kincannon, supra.*

5. The State did not attempt to enter the letter into evidence.

6. *Lowry v. State,* 364 Ark. 6, 216 S.W.3d 101 (2005); *Barnes v. State,* 346 Ark. 91, 55 S.W.3d 271 (2001); *Marts v. State,* 332 Ark. 628, 968 S.W.2d 41 (1998); *Esmeyer v. State,* 325 Ark. 491, 930 S.W.2d 302 (1996); *Johninson v. State,* 317 Ark. 431, 878 S.W.2d 727 (1994).

supreme court specifically rejected the appellant's argument that he was prejudiced because the State caught him in a lie about the letter, stating that it was "unwilling to hold that a defendant should be permitted to benefit from his own fabrication."[7] Likewise, Smith was not prejudiced just because the State caught him in a lie, and the trial court did not err in not allowing him to benefit from his own fabrication.

Finally, Smith's argument that he was prejudiced by the prosecution's use of his letter is without merit in light of the fact that there was ample other evidence that he committed the robberies and used a gun to do so.[8] For example, six witnesses testified that Smith robbed them and gave consistent descriptions of his clothing, firearm, and actions. Responding police officers testified that a jacket and cap matching the witnesses' descriptions were found at the scene of robberies; that one victim's wallet fell out of the jacket when it was picked up; and that another victim's cell phone was found immediately nearby.[9] In addition, a State firearm expert matched expended bullet casings with the pistol found at the scene, corroborating the victims' testimony that Smith was armed and had fired the gun, and a photograph of a bullet hole in one victim's trailer was entered into evidence, corroborating the victim's testimony that Smith shot at his trailer.

Therefore, I respectfully concur.

---

7. 346 Ark. 91, 103, 55 S.W.3d 271, 280 (2001).

8. *See, e.g., Hill v. State*, 370 Ark. 102, 257 S.W.3d 534 (2007); *cf. Bennett v. State*, 297 Ark. 115, 759 S.W.2d 799 (1988) (finding admission of defendant's statement, which was discovered by State moments before witness testified, to be overwhelmingly prejudicial because it was the *only* evidence of any statement or act by defendant that contradicted his testimony).

9. The victims testified that Smith took those items in the robberies.