2013 Ark. 174

**Billy Terrell ADAMS, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CR 12–375.**

Supreme Court of Arkansas.

April 25, 2013.

Stuart Vess, North Little Rock, for appellant.

Dustin McDaniel, Att'y Gen., By Eileen W. Harrison, Deputy Att'y Gen., for appellee.

COURTNEY HUDSON GOODSON, Justice.

Appellant Billy Terrell Adams appeals the order entered by the White County Circuit Court denying his petition for postconviction relief under Rule 37 of the Arkansas Rules of Criminal Procedure. For reversal, he contends that the trial court erred by not allowing him to subpoena a juror from his trial and by limiting his examination of a witness at the hearing; by not permitting him to amend his petition; by not invoking the rule to exclude his trial counsel from hearing the testimony of other witnesses; and by denying his petition for postconviction relief. Because this case involves postconviction relief, our jurisdiction is pursuant to Rule 37 and Arkansas Supreme Court Rule 1–2(a)(8). We affirm on all issues.

*Factual Background*

In August 2008, a jury convicted Adams of capital murder in the shooting death of Charles "Chucky" Cunningham and sentenced him to life in prison without parole. In reaching its verdict, the jury rejected Adams's claim of justification and the defense that he was unable to conform his conduct to the requirements of the law as a result of mental disease or defect. This court subsequently affirmed the conviction and sentence. *Adams v. State*, 2009 Ark. 375, 326 S.W.3d 764. As we noted in the opinion, the evidence at trial disclosed that Adams and Cunningham engaged in a physical altercation in the front yard of Adams's home. When the fight ended, Cunningham got into his vehicle, and Adams went inside the house after briefly

speaking with Cunningham through the car window. A few moments later, Adams emerged from the house carrying a shotgun, and from the front porch, he fired the weapon at the vehicle as Cunningham began driving away. Cunningham crashed into a utility pole after travelling a few blocks from Adams's home. According to the medical examiner, Cunningham died as a result of the gunshot wounds that he received. In *Adams*, one of the issues raised on appeal was that the circuit court erred in questioning a juror after the answer she gave regarding her vote during the jury poll. We declined to address the argument because trial counsel failed to make a contemporaneous objection.

On May 24, 2010, following the issuance of our mandate, Adams filed a timely, pro se petition for postconviction relief, alleging that he had received ineffective assistance of counsel at trial. His allegations included claims that counsel failed to adequately present the defense of mental disease or defect; failed to procure the attendance of witnesses who would have testified that a gun was removed from Cunningham's vehicle by someone at the scene of the accident; and failed to preserve for appeal the issue concerning the circuit court's questioning of the juror. In the petition, Adams requested a hearing, the appointment of counsel, and permission to file an amended petition. On September 2, 2010, he filed a motion to subpoena witnesses, including the juror who was questioned by the court during the polling of the jury.

On September 28, 2010, the circuit court held a preliminary hearing. The court denied Adams's motion to subpoena the juror and his request for the appointment of counsel. The circuit court stated that it would not set the petition for a hearing any sooner than sixty days in order to give Adams time to retain counsel. The court granted Adams's request to file an amended petition, limited, however, to the single issue of trial counsels' failure to object to remarks made by the prosecutor during closing argument.

By letters dated January 24 and May 6, 2011, the circuit court wrote Adams inquiring about whether he had retained counsel or whether he still intended to hire counsel. On August 23, 2011, the court informed Adams by letter that the hearing would take place on October 25, 2011. On September 26, 2011, Adams, still acting pro se, filed a sixteen-page amended petition for postconviction relief that raised issues beyond the claim that counsel were ineffective for not objecting to comments made by the prosecutor in closing argument. In the amended petition, Adams asserted that counsel were ineffective for not objecting to the prosecutor's statement in closing that Adams would be released if found not guilty by reason of mental disease or defect if the court found that he was no longer suffering from the mental disease or defect.[1]

At the outset of the hearing, the circuit court announced that it would consider only the claim of ineffective assistance of counsel contained in the amended petition concerning the failure to object to the statement made by the prosecutor during closing argument. The court ruled that it would not address the additional issues raised in the amended petition because of its previous ruling allowing amendment only as to that one issue and because the petition exceeded the ten-page limitation

1. We note that Adams raised another issue concerning trial counsels' failure to object to statements made by the prosecutor during closing argument. However, he does not raise that point on appeal. This issue, therefore, is considered abandoned. *Falcon Cable Media LP v. Ark. Pub. Serv. Comm'n,* 2012 Ark. 463, 425 S.W.3d 704.

found in Rule 37.1(b). Thereafter, Adams invoked "the rule" to exclude both of his trial counsel from the courtroom during the presentation of testimony. The circuit court denied that request but later altered its ruling by excluding counsel during each other's testimony and while Adams testified.

In support of the petition, Adams elicited the testimony of his appellate counsel, Bill James. James said, with regard to the juror-polling issue raised on appeal, that an objection would have preserved the point for appeal but that he could not say whether the appellate court would have deemed the argument meritorious.

Adams also presented the testimony of Dr. Bob Gale, who was Adams's expert witness at trial with respect to the defense of mental disease or defect. Gale said that he testified at trial that Adams suffered from a mental disease that rendered him unable to conform his conduct to the requirements of the law. Gale did not recall trial counsel mentioning the term "irresistible impulse," and he could not remember whether trial counsel discussed the benefit of having Adams's psychiatrist from UAMS testify to corroborate Gale's testimony. He stated, however, that he reviewed Adams's medical records prior to trial.

In addition, Adams called Herbert Gardner as a witness. Gardner had provided an affidavit for Cunningham's arrest, dated four months prior to Cunningham's murder, stating that Cunningham had beaten and pulled a gun on him in a jealous rage over Gardner's supposed relationship with Holly Cowan, the mother of Cunningham's child. When Adams began questioning Gardner about the incident, the circuit court ruled that the affidavit, which had been made a part of the trial record, spoke for itself and that it was not proper for Adams to inquire about what

Gardner remembered about the altercation with Cunningham. The court instructed Adams to limit his inquiry to the issue of whether trial counsel were ineffective for not securing Gardner's presence at trial. In this regard, the circuit court noted that counsel had subpoenaed Gardner for trial but that the sheriff had not been able to serve Gardner with the subpoena at the given address after two attempts. Gardner testified that he did not know that he was a named witness for the trial and that the address and phone number listed on the subpoena were old. He explained that he worked in the oil field and that his address had changed because he was in and out of town all of the time.

Brian Joe Cowan testified that Adams's counsel spoke with him in advance of trial and that she had asked him about disagreements that he had with Cunningham. Mr. Cowan stated that he told counsel that he did not get along with Cunningham, that they had argued and fought, and that he knew Cunningham to be violent. He stated, however, that because his sister, Holly Cowan, was upset about Cunningham's murder, he told counsel that he would not be a good witness because he did not "know if I could say what I needed to whether it was the truth or not."

In her testimony, Holly Cowan stated that she saw Cunningham beat up Gardner and that it was the first time that she had seen Cunningham beat anyone. She said that she did not see Cunningham with a gun that day; that she had never seen him with a gun; and that she did not know him as a person who beat people or carried a weapon. Ms. Cowan stated that she was not contacted by counsel about testifying at Adams's trial.

Anthony Turner, Adams's uncle, testified that he saw the fight between Adams and Cunningham as he was mowing his sister's yard. He did not see who struck

the first blow, but he said that Cunningham had Adams down on the ground beating him. Turner testified that Adams's attorneys did not contact him about testifying.

Roger Johnson testified that he was at the scene of the accident where Cunningham's vehicle struck the pole. He said that he arrived at the accident late, that he only heard from other onlookers that a gun was removed from Cunningham's vehicle, and that he had no knowledge of who might have taken a weapon. Johnson stated that he was not contacted by Adams's counsel about testifying.

Jim Petty, one of Adams's trial lawyers, testified that he began his representation three months before trial. He recalled discussing Holly Cowan as a witness with co-counsel, Ellen Reif, but he said that they did not feel that she would be a good witness. Petty testified that he and Reif met with six or seven members of Adams's family one day and that they were told that Anthony Turner was not at the meeting because he was inside the house either drinking or drunk. He did not recall Herbert Gardner being mentioned as a witness or discussing calling Adams's personal psychiatrist as a witness. Petty remembered Adams advising them that Cunningham normally carried a gun and asking them to ascertain whether a weapon was in Cunningham's vehicle, but he stated that Adams never said that he saw a gun in Cunningham's possession on the day of the incident. Petty testified that they employed an investigator to locate a gun that might have been taken from Cunningham's vehicle, but Petty said that they could not find anyone who knew anything about it. He recalled that one juror appeared to be confused when the jury was polled, but he did not remember the juror being emotional.

Ellen Reif testified that Adams's mother advised her not to use Anthony Turner as a witness because he was an alcoholic and unpredictable. Reif stated that she spoke with Adams's psychiatrist, and she said that it was his opinion that Adams was trying to come up with a diagnosis of mental disease in order to get out of the murder charge. Reif also stated that she discussed with Dr. Gale the potential for having Adams's psychiatrist testify but that Gale advised against it out of fear that it would disclose the psychiatrist's belief that Adams was a sociopath. For these reasons, she did not believe that the psychiatrist's testimony would have been helpful. Reif said that she could not locate Gardner prior to trial. She testified that she did speak to Holly Cowan before trial and that, as the mother of Cunningham's child, she was bitter and resentful. Reif said that she and Adams discussed subpoenaing Ms. Cowan but that they decided against it. About the alleged gun in Cunningham's vehicle, Reif stated that she both hired an investigator and also personally spoke to persons who were present at the scene of the car accident, and she testified that everyone she spoke to said that they never saw a gun. Reif confirmed that Adams did not tell her that he saw a gun during the altercation. Reif testified that she telephoned Robert Johnson but that he hung up on her. She said that she and Adams, together, made the decisions as to whom to call as witnesses. Reif testified that she recalled Adams discussing "irresistible impulse" and that she read the cases Adams gave her on the subject. She said that she submitted the jury instructions to the circuit court that appellant asked her to prepare but that the court rejected them. Reif stated that she did not object during the polling of the jury because the juror answered affirmatively that it was her verdict. She said that she watched the juror, that the juror

was comfortable in her decision, and that she did not appear to be in tears. Reif stated that she saw no need to object because the juror said that it was her verdict. She testified that "there was a lot of hard evidence to overcome" given that Adams "stood out on the front porch and . . . shot him with a shotgun, and [Adams] even told me that the shells that [he] used were not regular buckshot, but they were stronger—stronger pellets."

Adams testified that he and Reif did not communicate well. He said that there was another gun involved and that Reif had not testified truthfully in that regard. Adams said that his counsel did not speak to many of the witnesses at the site of the accident in order to locate a gun. He believed that counsel should have called Holly Cowan, Brian Cowan, and Gardner to testify about Cunningham's propensity for violence. Adams stated that his counsel should have objected to the closing remarks of the prosecutor that Adams believed were prejudicial and incorrect statements of the law. Further, he said that it would have made a difference in the outcome of the trial if his counsel had objected when the circuit court questioned the juror about her verdict. Adams was also critical of counsel not having his personal psychiatrist testify. He testified that the strategic decisions made by his counsel were not supported by reasonable professional judgment.

On January 25, 2012, the circuit court entered its order denying Adams's request for postconviction relief. In its order, the court acknowledged that it incorrectly believed that it had the discretion whether to exclude witnesses pursuant to Arkansas Rule of Evidence 615. The circuit court stated that, once it realized the error, it excluded counsel from the courtroom so that they could not hear each other's testimony or that of Adams. The court said that it had reviewed the testimony from the hearing and that neither counsel provided any significant conflicting testimony with the other witnesses. The court identified one exception. Holly Cowan testified that she did not speak to defense counsel, whereas Reif stated that she spoke with Ms. Cowan. The court resolved the conflict in Ms. Cowan's favor but found that counsel were not ineffective because her testimony would not have been beneficial to Adams at trial. The circuit court further found that counsel were not ineffective for not calling Gardner as a witness because the record showed that he could not be located and that counsel had made reasonable efforts to locate the witness. With regard to the alleged gun, the circuit court found that counsel made reasonable efforts to locate witnesses on that subject but that none were found who could verify that a gun was removed from Cunningham's vehicle.

As to the claim that counsel did not adequately prepare and present the defense of mental disease or defect, the circuit court found that counsel retained the services of Dr. Gale, who had access to and had reviewed Adams's medical records, including those of Adams's psychiatrist at UAMS. On the juror-polling issue, the court found that the juror did not imply that the guilty verdict was not her verdict but that she voted guilty after she was convinced of Adams's guilt. The circuit court also found that the prosecutor's remarks during closing argument were correct statements of the law and not improper. Appellant filed a timely notice of appeal from the circuit court's order.

### Subpoena of the Juror and Limitation on the Scope of Examination

Adams first argues that the circuit court erred by not allowing him to subpoena the juror who was questioned by the circuit court when the jury was polled at trial.

The circuit court's decision was based on Rule 606(b) of the Arkansas Rules of Evidence, which provides that a juror may not testify as to any "matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to [assent] to or dissent from the verdict or indictment or concerning his mental processes in connection therewith[.]" Adams contends on appeal that the rule does not prohibit a juror from testifying about matters that occur outside the jury room, such as when the jury is being polled. He argues that he should have been given the opportunity to question the juror so long as he stayed within the bounds of Rule 606(b).

■ This argument is being raised for the first time on appeal. At the hearing, Adams stated that he wished to question the juror about her "emotional state." Adams did not argue at the hearing that the line of questioning he desired to pursue was not objectionable under Rule 606(b). We do not consider issues that are raised for the first time on appeal. *Tornavacca v. State*, 2012 Ark. 224, 408 S.W.3d 727.

■ Adams also contends that the circuit court erred by restricting his examination of Gardner. On this point, the circuit court ruled that Gardner's affidavit was sufficient and that Adams should focus his inquiry on the reason why counsel failed to procure Gardner's attendance at trial. Adams argues that the circuit court erred by limiting his examination of the witness because it was necessary for him to develop the substance of Gardner's proposed testimony in order to support his claim of ineffective assistance of counsel. We find no error on this point. The substance of Gardner's testimony was supplied in the affidavit. Thus, Adams has failed to demonstrate how he was prejudiced by the circuit court's ruling. This court has consistently held that we will not reverse a decision of the trial court absent a showing of prejudice, as prejudice is not presumed. *Gaines v. State*, 340 Ark. 99, 8 S.W.3d 547 (2000). Further, Adams suggests that the same limitation was placed on his questioning of other witnesses. However, he does not identify the witnesses, nor does he explain how his questioning was restricted. His failure to develop the argument in his brief precludes review of this issue. *Cooper v. State*, 2012 Ark. 123, 2012 WL 859702 (per curiam).

*Amendment of the Petition*

■ For his next point on appeal, Adams argues that the circuit court erred by not allowing him to amend his petition for postconviction relief. Citing *Butler v. State*, 367 Ark. 318, 239 S.W.3d 514 (2006), he asserts that he did everything in his power to move the case forward and that the circuit court abused its discretion by not allowing the amendment.

■ Our rules of criminal procedure do allow for the amendment of a Rule 37 petition, but only with leave of the court. Ark. R.Crim. P. 37.2(e). Our standard of review as to the denial of leave to amend is abuse of discretion; we determine whether the circuit court's decision was arbitrary of groundless. *Rodriguez v. State*, 2010 Ark. 78, 2010 WL 569750 (per curiam). In *Butler*, *supra*, we distinguished those cases in which a petitioner seeks to substitute a new petition from those in which the petitioner desires to file an expanded petition that exceeds the ten-page limitation found in Rule 37.1(b). In the instant case, the circuit court did grant Adams permission to amend the petition to include the claim that counsel were ineffective for not objecting to comments made by the prosecutor during closing argument. However, when Adams filed the amended petition, it

not only included additional claims, but it also exceeded the ten-page limit. The circuit court considered the claim concerning closing argument but otherwise rejected the bulk of the over-length petition.

We have held that the rule limiting petitions to ten pages is an entirely reasonable restriction on petitioners seeking postconviction relief. *Davis v. State*, 2010 Ark. 366, 2010 WL 3794178 (per curiam) (citing *Sanders v. State*, 352 Ark. 16, 98 S.W.3d 35 (2003)). A petitioner under Rule 37.1 may demonstrate that he cannot adequately present his claims to the court in only ten pages and may request to file a petition longer than ten pages, but he may file the over-length petition only with the permission of the circuit court. *Murry v. State*, 2011 Ark. 343, 2011 WL 3930395 (per curiam) (citing *Rowbottom v. State*, 341 Ark. 33, 13 S.W.3d 904 (2000)). If a petitioner does not receive permission to file an over-length petition, he is obliged to proceed in accordance with our rules. *Id.; see also Davis, supra.* If he chooses not to do so, he must bear the consequences of his decision to submit an over-length amended petition. *Murry, supra.* Rule 37.1(b) clearly allows a circuit court to dismiss an over-length petition, stating, "The circuit court or appellate court may dismiss any petition that fails to comply with this subsection." Accordingly, we hold that the circuit court did not abuse its discretion by not accepting the additional issues raised in the over-length amended petition.

*Arkansas Rule of Evidence 615*

Adams contends under this point that the circuit court erred by not granting his request to invoke Rule 615 to exclude his trial counsel from the courtroom. He asserts that the circuit court's error mandates reversal of the postconviction order for another hearing.

The "rule," embodied in Rule 615, requires the exclusion of witnesses from the courtroom to prevent them from adjusting their testimony based upon what they have heard prior witnesses say. *Hill v. State*, 337 Ark. 219, 988 S.W.2d 487 (1999). Exclusion is mandatory upon request by either party, and only specific exceptions exist to allow witnesses to remain in the courtroom. *Id.* (citing *Clark v. State*, 323 Ark. 211, 913 S.W.2d 297 (1996)). The rule does not authorize the exclusion of a party, but we have held that trial counsel in postconviction proceedings do not become a party to the action by virtue of his or her status as former trial counsel. *King v. State*, 322 Ark. 51, 907 S.W.2d 127 (1995); *Chambers v. State*, 264 Ark. 279, 571 S.W.2d 79 (1978). The purpose of Rule 615 is to expose inconsistencies in the testimonies of different witnesses and "to prevent the possibility of one witness's shaping his or her testimony to match that given by other witnesses at trial." *Clark*, 323 Ark. at 217, 913 S.W.2d at 300 (quoting *King*, 322 Ark. at 55, 907 S.W.2d at 129).[2]

---

**2.** The dissent takes the position that we must reverse on this point based on the perceived conflict in the testimony concerning Dr. Gale's and Reifs recollections of discussions regarding the theory of "irresistible impulse." Adams does not make this claim, and there is no resulting prejudice. Both are required for reversal. While Gale could not recall discussing that precise term with counsel, what is plain from the record is that, through the trial testimony of Gale, counsel presented the defense that Adams was not able to conform his conduct to the requirements of the law due to mental disease or defect. As discussed *infra*, this defense encompasses the theory of "irresistible impulse." Indeed, Gale acknowledged at the hearing that the two concepts were similar and that he had testified at trial that Adams, because of acute stress disorder, could not conform his conduct to the requirements of the law because he was on "automatic" after being attacked, choked, and

However, on this issue, prejudice is not presumed, and we do not reverse absent a showing of prejudice. *Clark, supra.* An appellant must do more than allege prejudice, he must demonstrate it. *Jones v. State,* 374 Ark. 475, 288 S.W.3d 633 (2008). Here, the circuit court found that Adams was not prejudiced by its failure to exclude counsel from the courtroom while the other witnesses testified. Adams does not contest this finding, nor does he allege that any prejudice occurred. Therefore, Adams has failed to demonstrate reversible error.

### Denial of Petition

As his final issue on appeal, Adams argues that the circuit court erred in denying his petition for postconviction relief. He contends that counsel were ineffective in presenting the defense of mental disease or defect because they failed to present the testimony of his treating psychiatrist. He also claims that counsel were ineffective in their presentation of the defense of justification for not calling Gardner, Mr. Cowan, Ms. Cowan, and Roger Johnson. Adams asserts that counsel were not effective because they failed to preserve the issue for appeal regarding the circuit court's questioning of the juror when the jury was polled and because they did not object to remarks made by the prosecutor during closing argument.

Rule 37 is a narrow remedy designed to prevent wrongful incarceration under a sentence so flawed as to be void. *Williams v. State,* 347 Ark. 371, 64 S.W.3d 709 (2002). Judicial review of counsel's performance must be highly deferential. *Id.* This court does not reverse a denial of postconviction relief unless the circuit court's findings are clearly erroneous.

*Strain v. State,* 2012 Ark. 42, 394 S.W.3d 294(per curiam) (citing *Reed v. State,* 2011 Ark. 115, 2011 WL 913208 (per curiam)). A finding is clearly erroneous when, although there is evidence to support it, after reviewing the entire evidence, we are left with the definite and firm conviction that a mistake has been committed. *Sartin v. State,* 2012 Ark. 155, 400 S.W.3d 694. In making a determination on a claim of ineffective assistance of counsel, this court considers the totality of the evidence. *State v. Harrison,* 2012 Ark. 198, 404 S.W.3d 830. Our standard of review requires that we assess the effectiveness of counsel under the two-prong standard set forth by the Supreme Court of the United States in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Springs v. State,* 2012 Ark. 87, 387 S.W.3d 143.

In asserting ineffective assistance of counsel under *Strickland,* the petitioner must show that counsel's performance was deficient. *Williams v. State,* 2011 Ark. 489, 385 S.W.3d 228. This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment. *Id.* The reviewing court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Scott v. State,* 2012 Ark. 199, 406 S.W.3d 1. The defendant claiming ineffective assistance of counsel has the burden of overcoming that presumption by identifying the acts and omissions of counsel which, when viewed from counsel's perspective at the time of trial, could not have been the result of reasonable professional judgment. *Id.*

placed in fear of his life. Whether Gale and Reif did or did not discuss "irresistible impulse" in precise terms is of no consequence because this was the defense theory presented at trial.

In order to satisfy the second prong of the *Strickland* test, the petitioner must show that counsel's deficient performance prejudiced the defense, which requires showing that counsel's errors were so serious as to deprive the petitioner of a fair trial. *Montgomery v. State*, 2011 Ark. 462, 385 S.W.3d 189. In doing so, the petitioner must show that there is a reasonable probability that the fact-finder's decision would have been different absent counsel's errors. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Mingboupha v. State*, 2011 Ark. 219, 2011 WL 1805339 (per curiam).

Adams first claims that counsel were ineffective for not calling a number of persons as witnesses. The objective in reviewing an assertion of ineffective assistance of counsel concerning the failure to call certain witnesses is to determine whether this failure resulted in actual prejudice that denied the petitioner a fair trial. *Woody v. State*, 2009 Ark. 413, 2009 WL 2971758 (per curiam). In such cases, it is incumbent on the petitioner to name the witness, provide a summary of the testimony, and establish that the testimony would have been admissible into evidence. *Shipman v. State*, 2010 Ark. 499, 2010 WL 5185781 (per curiam). When assessing a trial counsel's decision not to call a particular witness, this court must take into account that the decision is largely a matter of professional judgment that experienced advocates could endlessly debate, and the fact that there was a witness or witnesses who could have offered beneficial testimony is not, in itself, proof of counsel's ineffectiveness. *Noel v. State*, 342 Ark. 35, 26 S.W.3d 123 (2000). In order to demonstrate prejudice, a petitioner is required to establish that there is a reasonable probability that, had counsel performed further investigation and presented the witness,

the outcome of the trial would have been different. *Greer v. State*, 2012 Ark. 158, 2012 WL 1223760 (per curiam).

Adams asserts that counsel were deficient for not calling his treating psychiatrist as a witness. However, he has not stated what the substance of the testimony might have been, and he did not call his psychiatrist as a witness at the hearing. Conclusory allegations that are unsupported by facts do not provide a basis for postconviction relief. *Greene v. State*, 356 Ark. 59, 146 S.W.3d 871 (2004). We also note that trial counsel testified that the psychiatrist's testimony would not have supported the defense, as the psychiatrist believed that Adams was attempting to manufacture a mental illness in order to avoid conviction and that he was a sociopath. Where a decision by counsel was a matter of trial tactics or strategy, and that decision is supported by reasonable professional judgment, then counsel's decision is not a basis for relief under Rule 37.1. *Abernathy v. State*, 2012 Ark. 59, 386 S.W.3d 477.

Adams next asserts that counsel should have presented the eyewitness testimony of Anthony Turner at trial. However, as noted by the circuit court, trial counsel elicited the testimony of other witnesses to the altercation, including members of Adams's family. This court has held that the omission of a witness when his or her testimony is cumulative does not deprive the defense of vital evidence. *Springs, supra; Helton v. State*, 325 Ark. 140, 924 S.W.2d 239 (1996). Appellant has not demonstrated that Turner's testimony was materially different from the other eyewitness testimony presented, and thus he has failed to demonstrate prejudice. In addition, trial counsel made the strategic decision, after consultation with Adams's mother, not to call Turner as a witness because he was an alcoholic and

unpredictable. Adams has failed to show that the decision not to call Turner as a witness is not supported by reasonable professional judgment.

Adams also asserts that counsel should have secured the presence of Brian Cowan in support of his claim of self-defense, as the witness had knowledge of Cunningham's violent nature. We have held that when justification is offered as a defense, evidence of a victim's violent character is relevant to the issue of which party was the aggressor and whether the accused reasonably believed himself to be in danger of suffering unlawful deadly force. *Henderson v. State*, 335 Ark. 346, 980 S.W.2d 266 (1998). However, this allegation was contained in Adams's amended petition, which the circuit court did not consider. Thus, the circuit court did not rule on this claim. We have upheld the circuit court's decision not to consider the over-length amended petition. In the absence of a ruling, we are precluded from addressing this claim. *Cowan v. State*, 2011 Ark. 537, 2011 WL 6275694 (per curiam).

Adams also contends that trial counsel were ineffective for not having Gardner and Holly Cowan testify as defense witnesses concerning the incident where Cunningham allegedly attacked Gardner. As to Gardner, counsel did subpoena him, but the address was incorrect. As Gardner explained at the hearing, he worked out of town, and the address provided to counsel was outdated. When counsel is not given complete information concerning the location of witnesses, the burden of the appellant to prove ineffective assistance of counsel is more difficult. *Chandler v. State*, 297 Ark. 432, 762 S.W.2d 796 (1989). Adams has not rebutted Gardner's explanation concerning his whereabouts, nor does he demonstrate, or even allege, a lack of diligence on the part of counsel for

failing to locate the witness. In fact, Adams does not challenge the circuit court's precise ruling that counsel made reasonable efforts to locate this witness. We cannot conclude that the circuit court's decision is clearly erroneous.

We also hold that the circuit court did not err in concluding that the decision not to call Ms. Cowan was a matter of trial strategy based upon reasonable professional judgment. Trial counsel testified that, as the mother of Cunningham's child, she was antagonistic toward appellant, and Ms. Cowan's testimony at the hearing reflects that her testimony would not have proved helpful. Adams has not demonstrated a reasonable likelihood that Ms. Cowan's testimony would have altered the outcome of trial.

Next, appellant contends that Roger Johnson had information that a gun was removed from Cunningham's vehicle after the accident and that trial counsels' performance was deficient because they did not interview or subpoena him as a witness. Trial counsel testified, however, that they pursued the possibility that Cunningham might have been armed by interviewing other witnesses at the scene and by hiring an investigator to look into the matter. In addition, Johnson had no personal knowledge about a gun being removed. The circuit court's decision on this point is not clearly erroneous.

In another point, Adams contends that his trial counsel failed to adequately present the defense of mental disease or defect. He argues that his defense included the theory that he was acting under the influence of an "irresistible impulse," which counsel failed to raise. This argument is without merit. As we observed in *Lipscomb v. State*, 271 Ark. 337, 609 S.W.2d 15 (1980), the term "irresistible impulse" is embodied in the concept of not being able, because of mental disease or

defect, to conform one's conduct to the requirements of the law, the standard found in Arkansas Code Annotated section 5–2–312(a)(1)(A) (Repl.2006). This is the defense trial counsel raised at trial.[3]

Adams also argues that counsel were ineffective for not preserving the issue concerning the circuit court's questioning of the juror when the jury was polled. He contends that the court's questions were improper and would have constituted reversible error had counsel raised an objection.

At the conclusion of trial, defense counsel asked for the jury to be polled after the verdict was pronounced, as permitted by Arkansas Code Annotated section 16–89–128 (Repl.2005). This statute provides that "[u]pon a verdict's being rendered, the jury may be polled at the instance of either party, which consists of the clerk or judge asking each juror if it is his or her verdict. If one (1) answers in the negative, the verdict cannot be received." The record of trial reflects the following:

> THE COURT: Polling of the Jury is a process where I inquire of each individual juror whether the verdict that I have just read, is, in fact, your verdict.
>
> . . . .
>
> THE COURT: Ms. Crisler?
>
> MS. CRISLER: That was the way we all voted.
>
> THE COURT: That was the way you voted?
>
> MS. CRISLER: No. Not. I didn't really want to but I was convinced.
>
> THE COURT: Okay, ma'am. The question is whether that is your verdict. Yes or no?

MS. CRISLER: Yes. That was the way I voted.

In *Rhodes v. State*, 290 Ark. 60, 716 S.W.2d 758 (1986), this court held that when a juror casts doubt on whether the verdict rendered is his or her verdict, and the court questions the juror until the juror casts an unequivocal vote, the juror is voting in the courtroom rather than in the jury room. We said that, where it appears that the guilty verdict is not unanimous because of a juror's response to being polled, the jurors must be returned to the jury room for further deliberations, otherwise the trial judge runs the risk of conducting a proceeding which, albeit well meant, will have the palpable effect of coercion. In *Rhodes*, we reversed a capital-murder conviction where a juror, when asked whether it was his verdict, responded that "[i]t is with a question." Upon further questioning by the court, the juror replied that he "wasn't sure either way." With more questioning, he then stated that he "agreed to it after we discussed it." After being asked whether he was convinced beyond a reasonable doubt of the appellant's guilt, the juror stated, "I'm sure."

The case at bar is distinguishable from *Rhodes*. The juror in this case stated that she was "convinced" to render a guilty verdict and "that was the way I voted." We perceive no equivocation on the part of the juror and cannot conclude that the juror impermissibly voted in the courtroom as a result of the court's questions. Thus, if counsel had raised an objection to the comment on this basis, the objection would have failed. A petitioner does not demonstrate the requisite prejudice for a

---

3. Under this point, Adams also contends that his counsel were deficient because they did not "attempt to argue culpable mental state as a separate and distinct issue from mental disease or defect." This argument was not raised or ruled upon below. We will not address arguments raised for the first time on appeal. *Gilliland v. State*, 2010 Ark. 135, 361 S.W.3d 279.

claim of ineffective assistance based on the failure to make an objection if he does not establish that counsel could have made a successful objection. *Davis v. State*, 2013 Ark. 118, 2013 WL 1091189 (per curiam); *Lowe v. State*, 2012 Ark. 185, 423 S.W.3d 6(per curiam).

Adams also contends that defense counsel were ineffective for not objecting to comments made by the prosecutor during closing argument. Adams asserts that the prosecutor improperly stated that Adams would "walk out" if he were acquitted as the result of mental disease or defect. Actually, the prosecutor stated that "if the judge finds he no longer suffers from it [mental disease or defect], he walks out." As found by the circuit court, the jury in this case was instructed in accordance with AMI Crim.2d 609, stating that "if you find Billy Terrell Adams not guilty by reason of mental disease or defect, the court will conduct a hearing. If the court determines that Billy Terrell Adams is no longer affected by mental disease or defect, the court will immediately discharge Billy Terrell Adams." This instruction is required pursuant to Arkansas Code Annotated section 5–2–312(a)(2), which provides that, when the affirmative defense of mental disease or defect is presented to a jury, "the jury shall be instructed regarding the disposition of a defendant acquitted on a ground of mental disease or defect[.]" Because the prosecutor's remark is consistent with the law, any objection raised by trial counsel would have been meritless. Therefore, counsel were not deficient for not objecting to the prosecutor's comments. *Lambert v. State*, 2012 Ark. 150, 2012 WL 1130590 (per curiam) (holding that, in order to carry his burden to demonstrate prejudice, a petitioner must show, when making a claim of ineffective assistance for failing to raise an objection or make an argument, that the objection or argument would have been successful if made).

Our review of the circuit court's decision reveals no reversible error. Therefore, we affirm the denial of postconviction relief.

Affirmed.

HART, J., dissents.

JOSEPHINE LINKER HART, Justice, dissenting.

I cannot accept the majority's rationale for disposing of Mr. Adams's argument concerning the trial court's denial of Mr. Adams's motion to apply Arkansas Rule of Evidence 615 to Mr. Adams's trial counsel. Mr. Adams's page-long block quote from *Finch v. State*, 335 Ark. 254, 984 S.W.2d 360 (1998), belies the majority's assertion that Mr. Adams "does not contest" the trial court's finding that Mr. Adams was not prejudiced by the failure to exclude his trial counsel from the courtroom while other witnesses testified. In *Finch*, this court stated that a petitioner was prejudiced in a Rule 37 proceeding when the trial court refused to impose "the rule" because it affected the "reliability of the outcome of postconviction proceedings" where resolution of the petitioner's claim "depends upon the resolution of conflicting testimony between witnesses for the petitioner and the attorney whose performance is questioned." 335 Ark. at 258, 984 S.W.2d at 362.

Here, the most prominent conflict in the testimony concerned the defense that Mr. Adams wished to pursue at his trial, based on "irresistible impulse." Dr. Bob Gale, Mr. Adams's psychiatric expert, testified that he did not recall speaking about "irresistible impulse" with Mr. Adams's trial counsel, Ellen Reif. Reif had the opposite recollection. I believe our decisions in *Finch* and *King v. State*, 322 Ark. 51, 907 S.W.2d 127 (1995), require that we reverse

and remand this case for a new evidentiary hearing.[1]

1. The majority misunderstands the holdings in *Finch* and *King*. In those cases, this court did not examine the merits of any point involving conflicting testimony; we held that if there was conflicting testimony after the trial court refused to grant a petitioner's request to invoke Rule 615, upholding the integrity of the process required that a new evidentiary hearing be held.