2017 Ark. App. 690

**Willie Lee DOBY, Jr., Appellant**

v.

**STATE of Arkansas, Appellee**

**No. CR–17–115**

Court of Appeals of Arkansas, DIVISION IV.

Opinion Delivered December 13, 2017

James Law Firm, by: Michael Kiel Kaiser and William O. "Bill" James, Jr., Little Rock, for appellant.

Leslie Rutledge, Att'y Gen., by: Valerie Glover Fortner, Ass't Att'y Gen., for appellee.

BRANDON J. HARRISON, Judge

The State alleged that Willie Lee Doby shot Lewis Thompson during an argument on Doby's front porch in the wee hours one morning in August 2014. A St. Francis County jury convicted Doby of first-degree murder. Doby was then sentenced to twenty-seven years' imprisonment in the Arkansas Department of Correction. He appeals and argues five points why the circuit court should be reversed:

1. The circuit court erred in excluding a defense investigator pursuant to Arkansas Rule of Evidence 615.

2. The circuit court erred in permitting the State to bolster Khalilah Thompson's testimony by playing a recording of her prior consistent statement to the jury that was inadmissible hearsay.

3. The circuit court erred in denying Doby's mistrial motion after the jury heard Thompson's recorded statement that Doby used bleach to wash gunshot residue from his hands and hid the murder weapon.

4. The State produced insufficient evidence to support Doby's first-degree murder conviction.

5. The felony information was fatally flawed because the State "failed to set forth the principal language of the first-degree murder statute."

Doby's fourth point on appeal, which we must address first because of potential double-jeopardy concerns, is that the circuit court erred by denying his motion for a directed verdict because the evidence does not sufficiently support his murder conviction. *Rankin v. State*, 329 Ark. 379, 385, 948 S.W.2d 397, 400 (1997). At the end of the State's case Doby argued that the murder charge should not be submitted to the jury because "[t]he facts have not been established." This general statement does not preserve the motion for appellate review under our case law or Rule 33.1(b) of the Arkansas Rules of Criminal Procedure, which requires that a directed-verdict motion based on insufficient evidence must specify in what manner the evidence is deficient; a motion merely stating that the evidence is insufficient does not preserve the issue for appellate review. *Merchant v. State*, 2017 Ark. App. 576, at 3, 532 S.W.3d 136.

We now turn to Doby's first point on appeal and hold that the circuit court abused its discretion in excluding a member of the defense team under Arkansas Rule of Evidence 615. And because we cannot say that the error was harmless, we must reverse and remand the case for proceedings consistent with this opinion. To be clear, we remand the case for further proceedings rather than dismiss it because our reversal is not related to Doby's guilt or innocence. *See generally United States v. Scott*, 437 U.S. 82, 90–91, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978) (The successful appeal of a judgment of conviction, except on the ground of insufficiency of the evidence to support the verdict, does not bar further prosecution on the same charge.).

## I. *Background*

On the first day of trial, in front of the entire jury pool, the circuit court introduced the defendant and the parties' attorneys. The court instructed the jury on the basics of reasonable doubt and the charges Doby faced. The court next stated, "I would ask the State to; to call the witnesses who may be expected to testify in this matter." The prosecutor replied:

Micah Lacy, Leslie Summers, Khalilah Thompson, Travis Williams, Angelo Banks, Dominic Madden, Dr. Charles P. Kokes, and Angela Hirtzel, a criminologist with the Arkansas Crime Lab. In

addition, various members of the Forrest City Police Department, including: Jeff Nichols, Cassandra Applewhite. These are officers, Your Honor. Darren Smith, Preston Gracy, Adrian Winfrey, Eric Varner, Morris McNutt.

Defense counsel then confirmed to the court that he did not expect to call any witness and that the prosecutor had "named all the possible witnesses." The court then asked the jurors, "Are any of you personally, or any immediate member of your family related to, or acquainted with, any of the attorneys, witnesses, or the Defendant?" Eventually, the jury was selected.

After the jury was empaneled but before opening arguments began, Doby requested a bench conference outside the jury's hearing. Defense counsel explained that he requested the conference because the prosecutor had asked that "the Rule" be applied to Investigator Speir, an investigator that the Public Defender Commission had hired to assist in Doby's defense. In defense counsel's words, Investigator Speir was his "work product ... an extension of me, as the attorney, doing the investigation." The prosecuting attorney denied that he intended to call Investigator Speir to testify about anything that could be considered work product. The prosecutor, in particular, stated:

[W]e have several instances here where people have said that things were said to them in the presence of other people that they considered to [be] intimidating. Now if I have to set about to prove that, I want the witnesses available to do it.

Next came this colloquy:

COURT: What does that have to do with Mr. Speir?

PROSECUTOR: Well, Mr. Speir would have been present at the time some of these conversations were had.

COURT: Is that speculation? Or is that something that you're pretty sure of?

PROSECUTOR: It's something I was told, not under oath, while this case was being tried. I have not been in a position to go put together that case. But in case I ever have to do, have to introduce testimony about that incident in this case, I want the witnesses available to do it with.

COURT: Mr. Coleman [defense counsel]?

DEFENSE: Once again, Your Honor, I don't know what he's talking about. But the thing is, even if the Court were to say, 'Okay, well he might have some evidence,' he was not listed as a witness. He was not voir dired to the jury. Nobody brought him up. He's been sitting here. He's here to assist me.

COURT: Do you agree with me that if John Doe was sitting back in the back that Mr. Long [prosecutor] could call him as a witness, if he wanted to? Whether he's subpoenaed or not?

DEFENSE: No, Your Honor. We, that's why we have witness lists ahead of time and we talk about the witnesses. You're opening it up—

COURT: No, I'm not opening anything. I'm just asking you a question.

DEFENSE: No, I don't think so. Especially cause you, that's why we voir dire the jury. Have you, do you know any of the witnesses? Do you know anything about the witnesses? And I'm just, like I said, neither one of us know what he's talking about. But the thing is, I do not think that there's anything he could talk about, if he's doing stuff.

COURT: ... Anybody else want to say anything?

PROSECUTOR: Judge, again, it has to do with conversations had in the presence of certain [of] our witnesses,

about consequences of testifying. Mr. Speir was present at the time of the conversations. If this all has to come up, you have to make an evidentiary ruling based on it. Then he's going to be called as a witness. And at that point in time Mr. Coleman [defense counsel] will be able to say, "He's under the Rule, he can't testify." And he would be right. I'm trying to protect myself against that. And furthermore, most of it I find out about at noon, some of it I found out about this morning.

COURT: Okay. Well, of course I have no idea what you're talking about.

DEFENSE: Well, and Your Honor, I would ask for a continuance. Or, you know, if he's bringing up new issues, with new witnesses, that I haven't heard about either, then I, I have a right to know what kind of witness, evidence he's talking about. Mr. Long is talking about starting a different kind of case than one that I've been given Discovery.

COURT: What about, Mr. Long, the issue that where professionals are allowed to stay in court?

PROSECUTOR: What, what's, what's his job in this court?

COURT: I, I just asked you a question.

PROSECUTOR: I mean, I'm asking that rhetorically. I'm not being querulous, I'm asking that rhetorically. What's his job in this court? Is he going to write a brief?

DEFENSE: They've got their investigator sitting right there.

PROSECUTOR: No, he's not. How are we going to have him here and—

DEFENSE: Well, that's what—I'm not calling Mr. Speir as a witness.

COURT: How are you going to call him as a witness, if he's not been disclosed?

PROSECUTOR: How are we going to call? Alright. What if a witness says, "I'm not testifying because it's been suggested that if I do, I might be dead?" And one of the people that was allegedly present when that conversation was had is Mr. Speir. And I'm asking you for a mistrial and I call Mr. Speir as a witness and Mr. Coleman says, 'I object.'

COURT: Alright, I'm going to leave the Rule in effect. Alright, let's call the jurors back in.

Investigator Speir was not allowed to remain in the courtroom. On the second day of trial defense counsel renewed his objection to Investigator Speir's being excluded from the trial. Then this colloquy occurred:

COURT: ... Mr. Coleman, the defense attorney, asked to come back here to put something on the record. So, Mr. Coleman, you may proceed.

DEFENSE: I want to renew my objection to my investigator, Steve Speir, being excluded under the Rule. Your Honor, he has been investigating for me, as I argued before, his work product. But the two witnesses, the two eye witnesses are supposed to testify today. And he's the person who interviewed them on my behalf. And I need him there to help me prepare the cross, after they testify. And it's denying my client effective assistance of counsel. And I want the Court to change its ruling.

COURT: Alright. Mr. Easley.

PROSECUTOR: Your Honor, as was argued yesterday, in front of the Court, we have reason to believe that Mr. Speir was a witness to potential witness intimidation or—tampering is not the right word—but, but potential witness intimidation. And if it becomes, comes out at trial the State wants to

reserve the ability to call him, as a witness in this case, to testify regarding the potential witness tampering or intimidation. If he is allowed, under the Rule, if he's allowed to stay in the courtroom, he would not be allowed to be called.

COURT: Well, of course he can be allowed to be called if I rule that he can stay in the courtroom. What I need to know is what harm is it going to be for him to stay in the courtroom? Are you alleging that he may change his testimony, based upon what somebody might say?

PROSECUTOR: I'm sorry your honor.

COURT: Are you saying that he may change his testimony if he's in the courtroom and he hears what was said?

PROSECUTOR: No, Your Honor.

COURT: Well, his testimony is going to be the same regardless. Is it not?

PROSECUTOR: I don't know what his testimony is going to be, Your Honor. I can't tell you what it's going to be. I don't know whether it will change. I, that would be pure speculation on my part.

COURT: But what I'm saying is, is that Mr. Speir is a type of person that seems to me, as the Court and as an observer of Mr. Speir, that he's not going to change his testimony one way or the other.

. . . .

PROSECUTOR: We believe so, Your Honor.

COURT: Why?

PROSECUTOR: Because it would hamper the State's ability to call him as a witness.

COURT: Tell me why.

PROSECUTOR: Because the rule, the Court has ruled, under Rule 615, that he should be excluded. The Court has made that ruling.

COURT: Well, if the Court rules that he should stay in the courtroom—this is a renewal of the motion—if the Court rules that he should stay in the courtroom, how will that hurt the purpose for which you would call him?

PROSECUTOR: Judge, what if it, what if you let him stay in the courtroom—if I could answer your question—what if you let him stay in the courtroom and then we get into some kind of hearing on a motion for mistrial—I, don't know what is going to happen—or something along those lines—cause something's been said by one of those witnesses—and we find it necessary to call Mr., Mr. Speir, as a witness. And Mr. Coleman, at that time, says, "Judge, he's been in the courtroom, the witnesses are under a Rule. The rule says "shall not be allowed to testify." It doesn't say "ought not to be," it says "shall not to be." What are you going to do then?

COURT: Well the Court, in its discretion, first of all can allow him not to be under the Rule and that would be not a real good argument. And second of all, I'm sure if Mr. Coleman had him in the courtroom, he, it would be with the idea that [he'd] waive any issues with the Rule. Is that right, Mr. Coleman?

DEFENSE: Yes, sir, that's right, your Honor.

PROSECUTOR: Your, Your Honor, furthermore, if, if Mr., if these witnesses testify, subject with what, with how, with what I'm expecting them to say, based on what's been told to me, then there would be, they would make statements that I would not want Mr. Speir to hear, because his testimony might change, based upon what is

heard in the courtroom. If, if it comes to that.

COURT: So you're saying that you do think that Mr. Speir may alter his testimony if he is allowed to stay in the courtroom.

PROSECUTOR: There is certainly that possibility, Your Honor. If he hears what a witness said, there's certainly a possibility that it would hamper our ability to question Mr. Speir about what actually happened. Because he would be able to alter his testimony based upon what the witnesses say.

COURT: Alright. Now what do you say to the argument that Mr. Coleman has made that he is the investigator and he needs him for cross examination of those witnesses?

PROSECUTOR: Your Honor, under, under my understanding of, of the need for an investigator, the investigator goes and takes statements, reports those statements to the attorney prior to the trial of the matter. That's my understanding of the purpose of an investigator. An investigator that goes out and takes statement from witnesses, statements from witnesses, their job is to report back to the attorney prior to trial.

. . . .

COURT: Well, I'm just looking at this case particularly, right now. But I try to treat everybody the same. That's why I'm asking all these questions. Mr. Coleman, why would your cross examination or your examination of your, of this, this witness, how could it be hampered by somebody, when, when I'm not going to be allowing them to whisper and talk to you while in the, standing up asking your questions?

DEFENSE: Well, it's not when I'm standing up. It's that he's done the investigation. I do have a report of what he says they said. But—

COURT: Okay.

DEFENSE: —they might say something else and I'll, and he will be able to say, "Well, when I talked to them they said this" or, you know, I, I did not speak to these people. My investigator did.

. . . .

COURT: Alright, the Court is going to remain with its ruling.

## II. *Discussion*

Doby's first point is that the court erroneously applied Arkansas Rule of Evidence 615 when it prevented his investigator from remaining in the courtroom during trial. In Doby's view, Investigator Speir was not a witness and therefore the court erred in excluding him under the Rule. Doby is correct. The State responds that it "gave opposing counsel notice and, essentially, verbally amended its witness list at the first moment it could do so. Therefore, the trial court did not abuse its discretion to subject Speir to the rule."

Some other rules are pertinent before we dig into the Ark. R. Evid. 615 issue. Arkansas Rule of Criminal Procedure 17.1(a)(1) requires prosecuting attorneys to disclose to defense counsel the names and addresses of persons the prosecutor intends to call as witnesses. If a witness is properly a rebuttal witness, however, then the State is not required to disclose his or her identity before trial. *DeLowry v. State*, 364 Ark. 6, 24, 216 S.W.3d 101, 113 (2005). And if the State does not comply with the rules of discovery, then the circuit court may permit discovery of the material not previously disclosed, grant a continuance, prohibit the party from introducing the undisclosed evidence, or enter any other order deemed

proper under the circumstances. Ark. R. Crim. P. 19.7. When evidence is not disclosed during the pretrial-discovery phase, the appellant must prove that the omission was sufficient to undermine the confidence in the trial's outcome. *Scroggins v. State*, 312 Ark. 106, 116–17, 848 S.W.2d 400, 405 (1993).

Rule 615 is an evidentiary rule that sets out the witness-exclusion rule. It states:

At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize the exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party that is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause.

Rule 615's purpose is to aid in exposing inconsistencies in the testimony of different witnesses and to prevent, or at least reduce, the possibility of one or more witnesses from shaping testimony to match other witnesses' testimony that has been elicited during a trial. *Adams v. State*, 2013 Ark. 174, 427 S.W.3d 63. By its plain terms, Rule 615 applies to witnesses. "The term 'witness,' in its strict legal sense, means one who gives evidence in a cause before a court; and in its general sense includes all persons from whose lips testimony is extracted to be used in any judicial proceeding, and so includes deponents and affiants as well as persons delivering oral testimony before a court or jury." 97 C.J.S. *Witnesses* § 1, at 350 (1957) (cited in *Witness, Black's Law Dictionary* 1838 (10th ed. 2014)). Exclusion is mandatory when requested by either party unless a specific exception is triggered that allows witnesses to remain in the courtroom. *Id.*

So circuit courts, as a basic proposition, have no discretion to apply Rule 615's exclusion given the rule's mandatory language. *Martin v. State*, 22 Ark. App. 126, 127, 736 S.W.2d 287, 288 (1987) citing *Blaylock v. Strecker*, 291 Ark. 340, 724 S.W.2d 470 (1987) (use of the word "shall" makes exclusion of the witnesses mandatory). A circuit court may, however, exercise a narrow amount of discretion to exclude or not exclude a witness's testimony for noncompliance with Rule 615. *Mooney v. State*, 2009 Ark. App. 622, at 12, 331 S.W.3d 588, 595. Our supreme court has held that prejudice is not presumed when Rule 615 is violated. *Jones v. State*, 2017 Ark. App. 286, at 4, 524 S.W.3d 1, 4. Consequently, a complaining party must do more than allege prejudice, "he must demonstrate it," whatever that means. *Adams v. State*, 2013 Ark. 174, at 14, 427 S.W.3d 63, 72.

Here, the "Investigator Speir as potential witness" issue did not even arise until after the jury had been empaneled. The State's brief on appeal argues that the prosecutor "essentially verbally amended its witness list at the first possible moment it could do so" during the trial. Appellee's Br. at 9. We disagree with this characterization of the colloquy, though the back-and-forth is admittedly unclear at times. What is clear, however, is that the circuit court did not rule that any party could amend the witness list. Rule 615 is concerned with the possibility that a witness present in court might modify his or her testimony to bolster or collude with other witness testimony. But those considerations were never substantially in play in this case. Simply put, Investigator Speir was never named as a potential witness; and there was no reasonable indication that he might be called as one for some legitimate purpose. The circuit court delved into the State's concern as best it

could in the circumstances through the long colloquies, much of which is included in this opinion. The State, however, was not clear enough on why it had a legitimate concern that the trial process would be infected if a member of the defense team was permitted to sit through the trial and assist defense counsel. The circuit court therefore abused its discretion by excluding Investigator Speir as a witness under Rule 615.

### III. *No Harmless Error*

■ As we stated earlier, Arkansas places the burden of proving prejudice on a defendant when Rule 615 was violated. *See Johnson v. State*, 2017 Ark. App. 373, at 8, 523 S.W.3d 908, 913 ("Johnson cannot demonstrate prejudice for two reasons. . . . Because Johnson |₁₃has not demonstrated that the court's failure to exclude Boone pursuant to Rule 615 was prejudicial, reversal is not warranted."); *see also Clark v. State*, 323 Ark. 211, 216, 913 S.W.2d 297, 300 (1996) (failing to show that any prejudice resulted when witness should have been excluded from the courtroom during trial); *Lard v. State*, 2014 Ark. 1, at 24, 431 S.W.3d 249, 267 ("[T]this court has consistently held that it will not reverse the circuit court's decision regarding this issue [Rule 615] absent a showing of prejudice, as prejudice is not presumed. However, to hold as harmless an error occurring in the penalty phase of a capital-murder trial, we must be able to reach the conclusion that the error was harmless beyond a reasonable doubt.") (internal citations omitted).

The usual "rule violation" cases we have cited above fall short of deciding this case as a matter of stare decisis because here, as a technical matter, the circuit court did not violate Rule 615. It did not technically violate the rule because it did not fail to exclude a witness from the courtroom.

What we have here is a decision that excluded an identified member of the defendant's trial team for a reason that, at best, was unclear and underdeveloped when the separation was imposed.

■ Despite the circuit court's well-intentioned but mistaken decision, we may declare an error harmless if the evidence of guilt is overwhelming and the error slight. *Proctor v. State*, 349 Ark. 648, 79 S.W.3d 370 (2002). Our supreme court has said that, before declaring that an error is harmless, it must conclude beyond a reasonable doubt that the error did not contribute to the verdict. *Jones v. State*, 336 Ark. 191, 984 S.W.2d 432 (1999). We must therefore ask whether the circuit court's decision to exclude Investigator Speir from the courtroom was a harmless error. The State, for its part, does not argue on appeal |₁₄that the Rule 615 decision was harmless to Doby. It instead argues that Doby has failed to demonstrate he was prejudiced by the court's Rule 615 decision, but as we stated, this really is not a typical Rule 615 case.

The general harmless-error standard for a nonconstitutional error asks whether the error materially affected the verdict. *See generally Sparkman v. State*, 91 Ark. App. 138, 148, 208 S.W.3d 822, 829 (2005) (reversing the circuit court and holding that the error could have materially affected the verdict). *Cf.* Ark. R. Civ. P. 61 (court must disregard any error or defect in the proceeding that does not affect the substantial rights of the parties). The Supreme Court of the United States has described what it means to affect substantial rights regarding preserved claims of nonconstitutional error:

If, when all is said and done, the [court's] conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand. . . . But if one

cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand."

*Kotteakos v. United States*, 328 U.S. 750, 764, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); *see also O'Neal v. McAninch*, 513 U.S. 482, 437, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995) (reversing when "the record is so evenly balanced that a conscientious judge is in grave doubt as to the harmlessness of an error").

Looking at the entire record in this case, we cannot say that excluding Investigator Speir from the trial was a harmless error. Doby maintains that Investigator Speir had direct knowledge of the witness testimony and was necessary to effectively cross-examine the State's witnesses and critical to help determine whether their testimony was consistent or inconsistent with prior statements. Regarding the right to cross-examination, our supreme court has held that a defendant's right to confront witnesses against him or her is guaranteed by the Sixth Amendment to the United States Constitution and article 2, section 10, of the Arkansas Constitution. *See Bowden v. State*, 301 Ark. 303, 308–09, 783 S.W.2d 842, 844–45 (1990). No one can reasonably dispute that the right to cross-examine witnesses is a core trial-court process in a criminal case.

On the details, Doby states that Investigator Speir would have been able to assist him in meeting "trial surprises" like when the State played Khalilah Thompson's (the victim's widow) prior recorded statement. Because we must determine whether an error was harmless, here is a summary of the trial testimony, which we recite solely for the purpose of evaluating whether the circuit court's decision to exclude Investigator Speir was harmless given the entire record.

### A. Trial Testimony

Forrest City police officer Darren Smith testified that he had responded to a "shots fired" call at 615 North Gorman Street but did not find anyone at that location. He did, however, find an incoherent male (later identified as Lewis Thompson) with a severe gunshot wound lying under a tree near 629 Gorman. Thompson was transported by ambulance but later died. Officer Smith said he was not able to "find any evidence of consequence," that he did not find any shell cases, that he did not find a gun, and that he was unable to locate any suspects. Officer Kathy Riggins testified that Doby's address was 629 Gorman and that Doby was a suspect. Through the testimony of Detective Cassandra Applewhite, the State introduced pictures of what it claimed was the consequence of a "gunshot" next door to the house where Doby lived. It also introduced pictures of a bottle of bleach and of bullets that Detective Applewhite testified she had retrieved from Doby's house.

Angela Hirtzell Evans, a criminologist at the Arkansas State Crime Lab, testified that she received four items from Doby: (1) a gunshot-residue kit; (2) red and black shorts; (3) a white shirt; and (4) a swab from underneath Doby's fingernails. She reported that she found particles characteristic of gunshot residue on Doby's shorts and shirt. She said the residue could mean that the person wearing the clothing discharged a firearm, that the

person was close to a firearm when it was discharged, or that the person came into contact with something carrying gunshot residue and the residue transferred to his or her clothing.

Pathologist Charles Paul Koches, M.D., testified that Lewis Thompson did not suffer a "close range fire" discharge from two feet or less away. The gunshot entrance wound, according to the doctor, was on Thompson's right mid-back area, and the bullet traveled downward through the torso, hitting the liver, duodenum, and aorta. Dr. Koches said that there was no exit wound and that he did not find a bullet because, perhaps, it had been inadvertently removed during emergency surgery. He concluded that Thompson died from a gunshot wound to the torso. On cross-examination, Dr. Koches could not say what caliber of weapon caused the fatal injury.

Khalilah Thompson testified that she was Lewis Thompson's wife and that her late husband and Doby were cousins. She said that she initially went to the police station and gave a statement that she was not there but at the store. She explained that she was scared for her life because Doby had told her not to say anything. She then told the jury that she gave another statement to the police at 10:55 a.m., the morning after the shooting, during which she "told the truth." Thompson testified that Doby had shot her husband on Doby's front porch. She said that her husband didn't realize that he had been shot after the first shot, and after the second shot, Lewis grabbed the area where he had been shot, turned around, and said, "Cuz, dang, you shot me for real." As Lewis "proceeded off" the porch, Thompson said that Doby "went off the porch behind and was continuously shooting him." She said there were three shots and that the "gun jammed or, or was out of bullets or something." She denied that her husband had

threatened Doby. On cross-examination, she confirmed that she went to the police station to tell them that she was at the store before she went to Memphis to see her dying husband. She also said there were multiple people on the porch. The court then allowed the prosecutor, over Doby's objection, to play a video recording of Thompson's 10:25 a.m. statement to the police. The recorded statement included allegations about bleach and a gun about which Thompson had not previously testified. This was the basis for a mistrial motion by Doby, which the court denied.

Micah Lacy, who was subpoenaed by the State, testified that "Silly Willie" a/k/a Doby shot Lewis Thompson and that the gun was "a little bull* * * * twenty-two." According to Lacy, Doby shot Lewis Thompson when Thompson was off the porch and then "he shot him again, in the back, standing right behind him." On cross-examination, Lacy described various threats that he said he had heard Thompson make, including that he would blow Doby's head off. He stated that he did not know if the fight between Thompson and Doby was about how Thompson was treating his wife. According to Lacy, Khalilah went to where Lewis was lying under the tree and said, "That was good that you got shot. You need to quit f* * * *n' with me. I don't want you." Lewis reportedly told Khalilah that he was going to "f* * * her up" when he got to his feet.

Leslie Summers testified in Doby's defense that everyone on the porch that night was doing cocaine, smoking weed, and drinking and that the "scale of anger" was high between Lewis and his wife (Summers's sister). He relayed a series of events and threats that Lewis had made against Doby and vice versa. He said that everyone was on the porch when they heard a gunshot and ran. Summers said he did not see anyone get shot but knew

Lewis Thompson had been shot. He testified that he did not shoot Thompson, that his sister was not the shooter because "[s]he ain't got the guts," and that he did not know if Doby's wife had shot Lewis. Summers stated that Doby and his wife had "put the murder charge" on him (Summers).

### B. Analysis

Given the summary of the testimony recited above, that the murder weapon (a gun) was never found, that Dr. Koches could not identify the caliber of the bullet that killed Thompson, that there was no known confession, and that there was no audio or visual recording of the incident, the strength of the State's case against Doby turned primarily on the credibility of the witnesses' testimony. On the whole, we cannot conclude beyond a reasonable doubt that excluding Investigator Speir from the courtroom did not influence the verdict or Doby's substantial right to effectively cross-examine some of the witnesses who testified against him. We therefore reverse and remand for proceedings consistent with this opinion.

Reversed and remanded for proceedings consistent with this opinion.

Gruber, C.J., and Virden, J., agree.